UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JOHN MEZZALINGUA ASSOCIATES, INC. d/b/a PPC,**<br><br>*Plaintiff*,<br><br>-vs-<br><br>**CORNING GILBERT INC.,**<br><br>*Defendant*. | CASE NO. 5:11-CV-761 (GLS/DEP)<br><br>**JURY TRIAL DEMANDED** |

<u>**COMPLAINT**</u>

Plaintiff, John Mezzalingua Associates, Inc. d/b/a PPC ("PPC"), by its attorneys, Hiscock & Barclay LLP, as and for its Complaint against defendant, Corning Gilbert Inc. ("Corning Gilbert"), alleges as follows:

<u>Nature of Action</u>

1. This action seeks relief arising out of Corning Gilbert's infringement of the following PPC patents, which cover coaxial cable connectors sold by PPC: (1) U.S. Patent No. 6,558,194 (the "'194 Patent"); and (2) U.S. Patent No. 6,848,940 (the "'940 Patent"). (True and correct copies of the '194 Patent and the '940 Patent are attached hereto as Exhibits A and B, respectively.)

2. Corning Gilbert already has been found by a federal jury to have infringed the '194 Patent.

3. On December 4, 2003, a federal jury in the Western District of Wisconsin, in an action entitled *John Mezzalingua Associates, Inc. v. Gilbert Inc.*, Civil Action No. 03-C-0353-

S (the "First Action"), found that certain "UltraSeal" series coaxial cable connectors sold by Corning Gilbert infringed the '194 Patent.

4.  On December 12, 2003, following the jury verdict of infringement, the district court entered a judgment against Corning Gilbert permanently enjoining the company from making, using, importing, selling, offer to sell and selling certain connectors or devices that are "no more than a colorable difference or variant" of such connectors. (A true and correct copy of December 12, 2003 Judgment is attached hereto as Exhibit C.)

5.  The injunction from the First Action remains in effect for the life of the '194 Patent.

6.  On February 9, 2004, PPC and Corning Gilbert entered into a confidential settlement agreement to resolve Corning Gilbert's infringement of the '194 Patent ("Settlement Agreement").

7.  Pursuant to the Settlement Agreement, Corning Gilbert agreed to no longer make, import, sell or offer to sell its "UltraSeal" series coaxial cable connectors designated under model numbers GF-US-59, GF-US-59Q, GF-UF-6 and GF-US-6Q.

8.  Despite its obligations under the injunction and the Settlement Agreement, Corning Gilbert continues to infringe the '194 Patent, and now also infringes PPC's '940 Patent through the sale of its "UltraShield" and "UltraRange" series coaxial cable connectors.

9.  Further, United States Customs and Border Protection ("CBP") recently determined that the UltraShield and UltraRange series connectors infringe the '194 Patent and are within the scope of a General Exclusion Order previously issued by the United States International Trade Commission ("ITC"). (A true and correct copy of the General Exclusion Order is attached hereto as Exhibit D.)

10. CBP informed PPC that as of June 22, 2011 it would begin detaining Corning Gilbert's UltraShield and UltraRange series connectors and refuse entry of any future shipments thereof, because Corning Gilbert's connectors infringe the '194 patent.

11. PPC now seeks damages, injunctive relief, a declaration that the case is exceptional, an award of attorney's fees, and such other and further relief as to this Court may seem just, proper and equitable.

## Parties

12. PPC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 6176 East Molloy Road, East Syracuse, New York.

13. Upon information and belief, Corning Gilbert is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 5320 W. Camelback Road, Glendale, Arizona.

## Jurisdiction and Venue

14. This Court has subject matter jurisdiction over the asserted claims pursuant to 28 U.S.C. §§ 1331 and 1338.

15. This Court has personal jurisdiction over Corning Gilbert, which regularly engages in extensive business transactions and solicitations in the State of New York and within this District, has contracted to supply goods and services within this District, and/or has committed acts of patent infringement in this District by making, selling and/or offering to sell, directly and/or through its agents or distributors, products that infringe one or more of the claims of one or more of PPC's patents.

16.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(b), because, upon information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this District.

## Factual Allegations

### The Industry

17.     PPC is a privately-held, family-operated company that is now in its third generation.

18.     PPC is a worldwide leader in the design and manufacture of coaxial cable connectors for the cable and telecommunication industries.

19.     PPC invests a substantial amount of capital in product development and improvement to maintain its position as a leading producer of innovative cable connector products.

20.     Coaxial cable connectors are used to link coaxial cable between various electronic devices, including televisions, cable television boxes and computer modems.

21.     PPC's cable connectors are used indoors and outdoors to connect cables from external sources (*e.g.*, a utility pole) to end-user electronic devices.

22.     Due to the high cost of labor associated with installing and maintaining cable connections, manufacturers of coaxial cable connectors attempt to design connectors that allow installers to create a long-term, reliable connection as quickly and easily as possible.

### The '194 and '940 Patents

23.     On July 21, 2000, PPC filed a patent application on Noah P. Montena's invention, U.S. Patent Application Serial No. 09/621975 (the "'975 Application"), which addressed the subject matter of economical manufacture of cable connectors with improved sealing. The

'975 Application claims priority to U.S. Patent Application Serial No. 08/910,509 (the "'509 Application"), filed on August 2, 1997, now U.S. Patent No. 6,153,830.

24. On May 6, 2003, the '975 Application resulted in the issuance of the '194 Patent. The '194 Patent was assigned to PPC by virtue of an assignment for the subject matter identified in the '509 Application, which is the parent application of the '975 Application. The assignment for the '509 Application was recorded with the U.S. Patent and Trademark Office under Reel/Frame No. 010451/0887 on December 15, 1999. PPC is the sole owner of, and has the sole right to sue upon, the '194 Patent.

25. PPC has placed the required statutory notice under 35 U.S.C. § 287 on all or substantially all products manufactured and sold by or for PPC under the '194 Patent after issuance thereof.

26. On January 21, 2003, PPC filed a patent application on Noah P. Montena's invention, U.S. Patent Application Serial No. 10/348,652 (the "'652 Application"), a continuation of the '975 Application, which addressed the subject matter of economical manufacture of cable connectors with improved sealing. The '652 Application claims priority both to the '975 and '509 Applications.

27. On February 1, 2005, the '652 Application resulted in the issuance of the '940 Patent. The '940 Patent was assigned to PPC by virtue of an assignment for the subject matter identified in the '509 Application, which is the grandparent application of the '652 Application. The assignment for the '509 Application was recorded with the U.S. Patent and Trademark Office under Reel/Frame No. 010451/0887 on December 15, 1999. PPC is the sole owner of, and has the sole right to sue upon, the '940 Patent.

28.     PPC has placed the required statutory notice under 35 U.S.C. § 287 on all or substantially all products manufactured and sold by or for PPC under the '940 Patent after issuance thereof.

**PPC's Enforcement of Its Patent Rights Against Corning Gilbert**

29.     PPC has already sued Corning Gilbert in district court for infringement of the '194 Patent in the First Action.

30.     The First Action involved Corning Gilbert's "UltraSeal" series coaxial cable connector products, which PPC contended infringed the '194 Patent.

31.     The First Action resulted in a jury verdict that the '194 Patent was valid and infringed by certain of Corning Gilbert's UltraSeal connectors.

32.     On December 12, 2003, a judgment was entered in favor of PPC and permanently enjoining Corning Gilbert from making, using, selling, offering to sell or importing its UltraSeal connectors and other connectors of "no more than a colorable difference or variant" in the United States.

33.     On February 9, 2004, PPC and Corning Gilbert executed the Settlement Agreement, pursuant to which they agreed to settle the First Action.

34.     Despite its obligations under the Settlement Agreement and court-ordered permanent injunction, Corning Gilbert continues to manufacture, use, sell or offer for sale, and/or import into the United States coaxial cable connector products that infringe the '194 Patent.

35.     In addition, Corning Gilbert manufactures, uses, sells or offers for sale, and/or imports into the United States cable connector products that infringe the '940 Patent.

**ITC and CBP Proceedings**

36. Gilbert offers for sale and sells its infringing products as "UltraShield" and "UltraRange" series coaxial cable connectors.

37. On March 31, 2010, the United States International Trade Commission ("ITC") in Investigation No. 337-TA-650 determined that certain foreign entities violated Section 337 of the Tariff Act of 1930 (19 U.S.C. § 1337) by importing and selling certain cable connectors that infringed the '194 Patent, and therefore, issued a General Exclusion Order prohibiting importation of such infringing connectors.

38. CBP is charged with enforcing the General Exclusion Order obtained by PPC in 2010.

39. CBP has reviewed Gilbert's manufacture, use, sale or offer for sale, and/or importation of its infringing UltraShield and UltraRange connectors.

40. Corning Gilbert's UltraShield and UltraRange connectors, in all material respects, use the same design as certain cable connectors that ITC found to infringe the '194 Patent in Investigation No. 337-TA-650.

41. On June 21, 2011, CBP advised PPC that it determined that the UltraShield and UltraRange connectors infringe the '194 Patent and are within the scope of the General Exclusion Order.

42. CBP advised PPC that as of June 22, 2011, CBP Headquarters would direct CBP officials at all Ports of entry in the United States to detain all Corning Gilbert UltraShield and UltraRange connectors at the United States border, before importation into the United States, and refuse entry of any future shipments thereof for the life of the '194 Patent.

43. CBP further advised it is in the process of finalizing a written determination that Corning Gilbert's UltraShield and UltraRange connectors infringe the '194 Patent and are within the scope of the General Exclusion Order.

44. CBP's written determination will be issued pursuant to the provisions of 19 C.F.R. Part 177, and the Office of International Trade at Customs Headquarters will make the decision available to CBP personnel, and to the public on the CBP homepage on the World Wide Web at www.cbp.gov.

## Count I
### (*Infringement of the '194 Patent*)

45. PPC repeats and reasserts all allegations contained in Paragraphs 1 through 44 above as if they were stated in full herein.

46. By virtue of the First Action, Corning Gilbert had actual knowledge of the '194 Patent.

47. By having made, used, offered for sale, sold, and/or imported in the United States its infringing UltraShield and UltraRange series coaxial cable connectors, Corning Gilbert has engaged in and/or has induced others to engage in acts of infringement of the '194 Patent, literally or under the doctrine of equivalents.

48. Such unlawful infringing activity by Corning Gilbert is continuing and will continue unless enjoined by this Court.

49. Corning Gilbert's acts of infringement have caused PPC to suffer irreparable harm and damages in an amount to be proven at trial, including lost sales, lost profits, lost sales opportunities, and loss of good will.  Unless and until Corning Gilbert is enjoined by this Court from further infringement, PPC will continue to suffer damages and irreparable injury.

50. Upon information and belief, Corning Gilbert has willfully, deliberately, and intentionally infringed the claims of the '194 Patent, which entitles PPC to a recovery of treble damages, attorney fees, and costs.

## Count II
### *(Infringement of the '940 Patent)*

51. PPC repeats and reasserts all allegations contained in Paragraphs 1 through 50 above as if they were stated in full herein.

52. By having made, used, offered for sale, sold, and/or imported in the United States its infringing UltraShield and UltraRange series coaxial cable connectors, Corning Gilbert has engaged in and/or has induced others to engage in acts of infringement of the '940 Patent, literally or under the doctrine of equivalents.

53. Such unlawful infringing activity by Corning Gilbert is continuing and will continue unless enjoined by this Court.

54. Corning Gilbert's acts of infringement have caused PPC to suffer irreparable harm and damages in an amount to be proven at trial, including lost sales, lost profits, lost sales opportunities, and loss of good will.  Unless and until Corning Gilbert is enjoined by this Court from further infringement, PPC will continue to suffer damages and irreparable injury.

55. Upon information and belief, Corning Gilbert has willfully, deliberately, and intentionally infringed the claims of the '940 Patent, which entitles PPC to a recovery of treble damages, attorney fees, and costs.

## Count III
### *(Preliminary and/or Permanent Injunction)*

56. PPC repeats and reasserts all allegations contained in Paragraphs 1 through 55 above as if they were stated in full herein.

57. Corning Gilbert has wrongfully made, used, offered for sale, sold, and/or imported, and continue to make, use, offer for sale, sell, and/or import into the United States, products that practice the '194 and '940 Patents.

58. Corning Gilbert's wrongful conduct constitutes infringement of the '194 and '940 Patents, which continues and will continue unless enjoined by this Court.

59. Based on the foregoing, PPC is entitled to a preliminary and/or permanent injunction enjoining Corning Gilbert from making, using, offering for sale, selling, and/or importing in the United States products that practice the '194 and '940 Patents, together with an award of damages sustained by PPC, including, but not limited to, reasonable attorney fees and expenses.

## Jury Demand

PPC demands a trial by jury on all issues so triable.

## Request For Relief

**WHEREFORE**, PPC urges the Court to grant the following relief:

    A.    Entry of judgment that Corning Gilbert has infringed the '194 and '940 Patents;

    B.    Entry of judgment that preliminarily and/or permanently enjoins Corning Gilbert and its representatives, assigns or successors, or any subsidiaries, parents, divisions, agents, servants, employees thereof, and/or those in privity with Corning Gilbert from infringing, contributing to the infringement of, and inducing the infringement of the '194 and '940 Patents;

    C.    Entry of judgment for compensatory damages for patent infringement, as provided in 35 U.S.C. § 284, the extent of which will be determined at trial, but in no event less than a reasonable royalty, together with interest and costs;

    D.    A determination that Corning Gilbert's acts of infringement of one or more of the '194 and '940 Patents have been willful and an award of

enhanced damages of up to three times the amount of actual damages pursuant to 35 U.S.C. § 284;

E. A determination that, pursuant to 35 U.S.C. § 285, this is an exceptional case and that PPC be awarded its reasonable attorney's fees;

F. An award of interest on any judgment rendered in this action;

G. An award of its attorney's fees and costs in this action; and

H. Such other and further relief as is just and proper.

5432864

11

Dated: July 5, 2011

        HISCOCK & BARCLAY, LLP

        /s *Gabriel M. Nugent*
By:  Gabriel M. Nugent (Bar Roll No. 513947)
      Douglas J. Nash (Bar Roll No. 511889)
      Alpa V. Patel (Bar Roll No. 514157)

One Park Place
300 South State Street
Syracuse, New York 13202
Tel: (315) 425-2836
Fax: (315) 703-7361
Email: gnugent@hblaw.com

*Attorneys for John Mezzalingua Associates, Inc., d/b/a PPC*