**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| John Mezzalingua Associates, Inc., d/b/a PPC  : | 11-cv-00761-GLS-DEP |
| : | |
| Plaintiff/Counterclaim-Defendant,  : | |
| : | |
| vs.  : | **ANSWER & COUNTERCLAIMS** |
| : | |
| Corning Gilbert Inc.  : | **JURY TRIAL DEMANDED** |
| : | |
| Defendant/Counterclaim-Plaintiff.  : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

<u>**DEFENDANT CORNING GILBERT INC.'S ANSWER AND COUNTERCLAIMS**</u>

Defendant and Counterclaim-Plaintiff Corning Gilbert Inc. (Corning Gilbert), by its attorneys, hereby answers the Complaint of Plaintiff John Mezzalingua Associates, Inc. d/b/a PPC (PPC), states its defenses, and asserts counterclaims as follows:

<u>Nature of Action</u>

1.       This action seeks relief arising out of Corning Gilbert's infringement of the following PPC patents, which cover coaxial cable connectors sold by PPC: (1) U.S. Patent No. 6,558,194 (the "'194 Patent"); and (2) U.S. Patent No. 6,848,940 (the "'940 Patent"). (True and correct copies of the '194 Patent and the '940 Patent are attached hereto as Exhibits A and B, respectively.)

**Answer to Paragraph 1**:       Corning Gilbert admits that this is an action for patent infringement of the '194 Patent and the '940 Patent and that those patents were attached to the complaint as Exhibits A and B.  Corning Gilbert expressly denies that it infringes either the '194 Patent or the '940 Patent.  Corning Gilbert denies the remaining allegations of this paragraph.

2.       Corning Gilbert already has been found by a federal jury to have infringed the '194 Patent.

**Answer to Paragraph 2:**          Corning Gilbert admits that in 2003 a federal jury found the '194 Patent to be infringed by certain coaxial cable connectors that are not at issue in this case.  Further, Corning Gilbert states that the UltraRange® and UltraShield™ series coaxial cable connectors at issue in this case were not before the jury in the 2003 case.  Corning Gilbert denies that the UltraRange® or UltraShield™ series coaxial cable connectors infringe the `194 Patent.

> 3.       On December 4, 2003, a federal jury in the Western District of Wisconsin, in an action entitled *John Mezzalingua Associates, Inc. v. Gilbert Inc.*, Civil Action No. 03-C-0353-S (the "First Action"), found that certain "UltraSeal" series coaxial cable connectors sold by Corning Gilbert infringed the '194 Patent.

**Answer to Paragraph 3:**          Corning Gilbert admits that on December 4, 2003, a federal jury in the Western District of Wisconsin, in an action entitled *John Mezzalingua Associates, Inc. v. Gilbert, Inc.*, Civil Action No. 03-C-0353-S, found that certain "UltraSeal" brand connectors not at issue in this case infringed the `194 Patent.  Further, Corning Gilbert states that the UltraRange® and UltraShield™ series coaxial cable connectors at issue in this case were not before the jury in the 2003 case.  Corning Gilbert denies that the UltraRange® or UltraShield™ series coaxial cable connectors infringe the `194 Patent.

> 4.       On December 12, 2003, following the jury verdict of infringement, the district court entered a judgment against Corning Gilbert permanently enjoining the company from making, using, importing, selling, offer to sell and selling certain connectors or devices that are "no more than a colorable difference or variant" of such connectors. (A true and correct copy of December 12, 2003 Judgment is attached hereto as Exhibit C.)

**Answer to Paragraph 4:**          Corning Gilbert admits that on December 12, 2003 the district court in the Western District of Wisconsin entered the judgment attached as Exhibit C to the complaint.  Corning Gilbert denies the remaining allegations of this paragraph.

5.      The injunction from the First Action remains in effect for the life of the '194 Patent.

**Answer to Paragraph 5:**          Corning Gilbert denies the allegations of paragraph 5.

6.      On February 9, 2004, PPC and Corning Gilbert entered into a confidential settlement agreement to resolve Corning Gilbert's infringement of the '194 Patent ("Settlement Agreement").

**Answer to Paragraph 6:**          Corning Gilbert admits that on February 9, 2004, PPC and Corning Gilbert entered into a confidential settlement agreement ("Settlement Agreement") to resolve the First Action.  Corning Gilbert denies the remaining allegations of this paragraph.

7.      Pursuant to the Settlement Agreement, Corning Gilbert agreed to no longer make, import, sell or offer to sell its "UltraSeal" series coaxial cable connectors designated under model numbers GF-US-59, GF-US-59Q, GF-UF-6 and GF-US-6Q.

**Answer to Paragraph 7:**          Corning Gilbert denies that the allegations of paragraph 7 accurately reflect the entire agreement between the parties and refers the court to the Settlement Agreement as the best evidence of its terms.  Corning Gilbert admits that among other provisions, Corning Gilbert represented and warranted not to make, use, import or sell in the United States the listed connector model numbers as provided for in the Settlement Agreement. Corning Gilbert denies the remaining allegations of this paragraph.

8.      Despite its obligations under the injunction and the Settlement Agreement, Corning Gilbert continues to infringe the '194 Patent, and now also infringes PPC's '940 Patent through the sale of its "UltraShield" and "UltraRange" series coaxial cable connectors.

**Answer to Paragraph 8:**          Corning Gilbert denies the allegations of this paragraph.

9.      Further, United States Customs and Border Protection (CBP) recently determined that the UltraShield and UltraRange series connectors infringe the '194 Patent and are within the scope of a General Exclusion Order previously issued by the United States International Trade Commission ("ITC"). (A true and correct copy of the General Exclusion Order is attached hereto as Exhibit D.)

**Answer to Paragraph 9:**          Corning Gilbert admits that a General Exclusion Order was issued by the ITC and was attached to the complaint as Exhibit D.  On information and belief, however, CBP has made no determination that either the UltraRange® or the UltraShield™ connectors are within the scope of such Order.  Corning Gilbert denies the remaining allegations of this paragraph.

10.      CBP informed PPC that as of June 22, 2011 it would begin detaining Corning Gilbert's UltraShield and UltraRange series connectors and refuse entry of any future shipments thereof, because Corning Gilbert's connectors infringe the '194 patent.

**Answer to Paragraph 10:**          On information and belief, CBP has made no determination that either the UltraRange® or the UltraShield™ connectors are within the scope of any exclusion order issued by the ITC.  However, Corning Gilbert is without sufficient information to either admit or deny the allegations of paragraph 10, and on that basis denies them.

11.      PPC now seeks damages, injunctive relief, a declaration that the case is exceptional, an award of attorney's fees, and such other and further relief as to this Court may seem just, proper and equitable.

**Answer to Paragraph 11:**          Corning Gilbert admits that PPC purports to seek the relief listed in paragraph 11.

## Parties

12.     PPC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 6176 East Molloy Road, East Syracuse, New York.

**Answer to Paragraph 12:**          Corning Gilbert is without sufficient information to either admit or deny the allegations of paragraph 12, and on that basis, denies them.

13.     Upon information and belief, Corning Gilbert is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 5320 W. Camelback Road, Glendale, Arizona.

**Answer to Paragraph 13:**          Corning Gilbert admits that it is a Delaware corporation with a place of business at 5320 W. Camelback Road, Glendale, Arizona.  Corning Gilbert denies the remaining allegations of this paragraph.

## Jurisdiction and Venue

14.     This Court has subject matter jurisdiction over the asserted claims pursuant to 28 U.S.C. §§ 1331 and 1338.

**Answer to Paragraph 14:**          Corning Gilbert admits that this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

15.     This Court has personal jurisdiction over Corning Gilbert, which regularly engages in extensive business transactions and solicitations in the State of New York and within this District, has contracted to supply goods and services within this District, and/or has committed acts of patent infringement in this District by making, selling and/or offering to sell, directly and/or through its agents or distributors, products that infringe one or more of the claims of one or more of PPC's.

**Answer to Paragraph 15:**          Corning Gilbert does not dispute the exercise of personal jurisdiction over it in this case.  Except as expressly admitted, Corning Gilbert denies every allegation of paragraph 15 and specifically denies that it has committed any acts of patent infringement in this District.

16.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(b), because, upon information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this District.

**Answer to Paragraph 16:**          Corning Gilbert does not dispute the existence of venue in this district.  Corning Gilbert denies the remaining allegations of paragraph 16.

## Factual Allegations

### The Industry

17.     PPC is a privately-held, family-operated company that is now in its third generation.

**Answer to Paragraph 17:**          Corning Gilbert is without sufficient information to admit or deny the allegations of paragraph 17, and on that basis, denies all allegations therein.

18.     PPC is a worldwide leader in the design and manufacture of coaxial cable connectors for the cable and telecommunication industries.

**Answer to Paragraph 18:**          Corning Gilbert admits that PPC has substantial market share in the market for drop cable connectors in the US and Canada.  Corning Gilbert denies the remaining allegations of this paragraph.

19.     PPC invests a substantial amount of capital in product development and improvement to maintain its position as a leading producer of innovative cable connector products.

**Answer to Paragraph 19:**          Corning Gilbert is without sufficient information to admit or deny the allegations of paragraph 19, and on that basis, denies all allegations therein.

20.     Coaxial cable connectors are used to link coaxial cable between various electronic devices, including televisions, cable television boxes and computer modems.

**Answer to Paragraph 20:**          Corning Gilbert admits that coaxial cable connectors are used to couple cables to equipment ports, terminals, or the like.  Corning Gilbert denies the remaining allegations of this paragraph.

21.    PPC's cable connectors are used indoors and outdoors to connect cables from external sources (*e.g.*, a utility pole) to end-user electronic devices.

**Answer to Paragraph 21:**          Corning Gilbert admits that cable connectors generally can be used indoors and outdoors to connect cables from external sources to end-user electronic devices.  Corning Gilbert denies the remaining allegations of this paragraph.

22.    Due to the high cost of labor associated with installing and maintaining cable connections, manufacturers of coaxial cable connectors attempt to design connectors that allow installers to create a long-term, reliable connection as quickly and easily as possible.

**Answer to Paragraph 22:**          Corning Gilbert admits that some coaxial cable connectors are designed to be installed to create a long-term, reliable connection.  Corning Gilbert denies the remaining allegations of this paragraph.

**The '194 and '940 Patents**

23.    On July 21, 2000, PPC filed a patent application on Noah P. Montena's invention, U.S. Patent Application Serial No. 09/621975 (the "'975 Application"), which addressed the subject matter of economical manufacture of cable connectors with improved sealing. The '975 Application claims priority to U.S. Patent Application Serial No. 08/910,509 (the "'509 Application"), filed on August 2, 1997, now U.S. Patent No. 6,153,830.

**Answer to Paragraph 23:**          Corning Gilbert admits that the face of the `194 patent indicates that PPC filed an application for a patent on behalf of Noah P. Montena on July 21, 2000 that was given Serial No. 09/621,975 ("the '975 Application").  Corning Gilbert further admits that the face of the `194 Patent indicates an attempt to claim priority to application Serial

No. 08/910,509 ("the '509 Application") that was filed on August 2, 1997, and that issued as

U.S. Patent No. 6,153,830.  Corning Gilbert denies the remaining allegations of this paragraph.

24.     On May 6, 2003, the '975 Application resulted in the issuance of
the '194 Patent.  The '194 Patent was assigned to PPC by virtue of an assignment
for the subject matter identified in the '509 Application, which is the parent
application of the '975 Application. The assignment for the '509 Application was
recorded with the U.S. Patent and Trademark Office under Reel/Frame No.
010451/0887 on December 15, 1999. PPC is the sole owner of, and has the sole
right to sue upon, the '194 Patent.

**Answer to Paragraph 24:**          Corning Gilbert admits that the '975 Application

issued as the '194 Patent, but denies that it was properly or lawfully issued in accordance with

the Patent Laws of the United States.  Corning Gilbert further admits that Reel/Frame No.

010451/0887 purports to show an assignment of the '509 Application to PPC.  Corning Gilbert is

without sufficient information to admit or deny the remaining allegations of paragraph 24.

25.     PPC has placed the required statutory notice under 35 U.S.C. § 287
on all or substantially all products manufactured and sold by or for PPC under the
'194 Patent after issuance thereof.

**Answer to Paragraph 25:**          Corning Gilbert is without sufficient information to

admit or deny the allegations of paragraph 25, and on that basis, denies them.

26.     On January 21, 2003, PPC filed a patent application on Noah P.
Montena's invention, U.S. Patent Application Serial No. 10/348,652 (the "'652
Application"), a continuation of the '975 Application, which addressed the subject
matter of economical manufacture of cable connectors with improved sealing.
The '652 Application claims priority both to the '975 and '509 Applications.

**Answer to Paragraph 26:**          Corning Gilbert admits that the face of the `940

patent indicates that PPC filed an application for a patent on behalf of Noah P. Montena on

January 23, 2003 that was given Serial No. 10/348, 652 ("the '652 Application").  Corning

Gilbert further admits that the face of the `940 patent indicates that the '652 Application purports

to be a continuation application of the '975 Application and indicates a claim to priority to the '975 and '509 Applications.  Corning Gilbert denies the remaining allegations of this paragraph.

27.     On February 1, 2005, the '652 Application resulted in the issuance of the '940 Patent. The '940 Patent was assigned to PPC by virtue of an assignment for the subject matter identified in the '509 Application, which is the grandparent application of the '652 Application. The assignment for the '509 Application was recorded with the U.S. Patent and Trademark Office under Reel/Frame No. 010451/0887 on December 15, 1999. PPC is the sole owner of, and has the sole right to sue upon, the '940 Patent.

**Answer to Paragraph 27:**          Corning Gilbert admits that the '652 Application issued as the '940 Patent, but denies that the patent was properly issued or issued in accordance with the Patent Laws of the United States.  Corning Gilbert further admits that Reel/Frame No. 010451/0887 purport to show an assignment of the '509 Application to PPC.  Corning Gilbert is without sufficient information to admit or deny the remaining allegations of paragraph 27, and therefore denies them.

28.     PPC has placed the required statutory notice under 35 U.S.C. § 287 on all or substantially all products manufactured and sold by or for PPC under the '940 Patent after issuance thereof.

**Answer to Paragraph 28:**          Corning Gilbert is without sufficient information to admit or deny the allegations of paragraph 28, and on that basis, denies them.

**PPC's Enforcement of Its Patent Rights Against Corning Gilbert**

29.     PPC has already sued Corning Gilbert in district court for infringement of the '194 Patent in the First Action.

**Answer to Paragraph 29:**          Corning Gilbert admits that in 2003 PPC sued Gilbert Inc. for infringement of the '194 Patent.  However, the products found by the jury to infringe in that case are not at issue in this case and have not been sold in the United States by Corning Gilbert in eight years.  Corning Gilbert denies the remaining allegations of this paragraph.

30.     The First Action involved Corning Gilbert's "UltraSeal" series coaxial cable connector products, which PPC contended infringed the '194 Patent.

**Answer to Paragraph 30:**          Corning Gilbert admits that the First Action involved certain Corning Gilbert's UltraSeal™ connectors.   Corning Gilbert denies the remaining allegations of this paragraph.

31.     The First Action resulted in a jury verdict that the '194 Patent was valid and infringed by certain of Corning Gilbert's UltraSeal connectors.

**Answer to Paragraph 31:**          Corning Gilbert denies the allegations of this paragraph.

32.     On December 12, 2003, a judgment was entered in favor of PPC and permanently enjoining Corning Gilbert from making, using, selling, offering to sell or importing its UltraSeal connectors and other connectors of "no more than a colorable difference or variant" in the United States.

**Answer to Paragraph 32:**          Corning Gilbert admits that a judgment was entered in the First Action on December 12, 2003, and that that judgment was attached to the complaint as Exhibit C.  Corning Gilbert denies the remaining allegations of this paragraph and directs the Court to the judgment as the best evidence of what it provides.

33.     On February 9, 2004, PPC and Corning Gilbert executed the Settlement Agreement, pursuant to which they agreed to settle the First Action.

**Answer to Paragraph 33:**          Corning Gilbert admits that the parties executed the Settlement Agreement.  Corning Gilbert denies the remaining allegations of this paragraph.

34.     Despite its obligations under the Settlement Agreement and court-ordered permanent injunction, Corning Gilbert continues to manufacture, use, sell or offer for sale, and/or import into the United States coaxial cable connector products that infringe the '194 Patent.

**Answer to Paragraph 34:**          Corning Gilbert denies the allegations of paragraph 34.

35.     In addition, Corning Gilbert manufactures, uses, sells or offers for sale, and/or imports into the United States cable connector products that infringe the '940 Patent.

**Answer to Paragraph 35:**          Corning Gilbert denies the allegations of paragraph 35.

## ITC and Corning Gilbert Proceedings

36.     Corning Gilbert offers for sale and sells its infringing products as "UltraShield" and "UltraRange" series coaxial cable connectors.

**Answer to Paragraph 36:**          Corning Gilbert admits that it offers for sale and sells coaxial connectors under the UltraRange® and UltraShield™ connector brands.  Corning Gilbert specifically denies that these connectors infringe either the '194 or '940 Patents and denies the remaining allegations of paragraph 36.

37.     On March 31, 2010, the United States International Trade Commission ("ITC") in Investigation No. 337-TA-650 determined that certain foreign entities violated Section 337 of the Tariff Act of 1930 (19 U.S.C. § 1337) by importing and selling certain cable connectors that infringed the '194 Patent, and therefore, issued a General Exclusion Order prohibiting importation of such infringing connectors.

**Answer to Paragraph 37:**          As Corning Gilbert was not named as a respondent in Investigation No. 337-TA-650, Corning Gilbert is without sufficient information to admit or deny the allegations of paragraph 37, and on that basis, denies them.

38.     CBP is charged with enforcing the General Exclusion Order obtained by PPC in 2010.

**Answer to Paragraph 38:**          Paragraph 38 contains an allegation as to the legal obligations of a government agency and requires no response from Corning Gilbert.

39.     CBP has reviewed Gilbert's manufacture, use, sale or offer for sale, and/or importation of its infringing UltraShield and UltraRange connectors.

**Answer to Paragraph 39:** Corning Gilbert denies that either its UltraRange® or UltraShield™ connectors are infringing.  Corning Gilbert lacks sufficient information to admit or deny the remaining allegations of paragraph 39, and on that basis, denies them.

40.   Corning Gilbert's UltraShield and UltraRange connectors, in all material respects, use the same design as certain cable connectors that ITC found to infringe the '194 Patent in Investigation No. 337-TA-650.

**Answer to Paragraph 40:** Corning Gilbert denies the allegations of paragraph 40, in part based on lack of information as to the connectors at issue in the ITC investigation.

41.   On June 21, 2011, CBP advised PPC that it determined that the UltraShield and UltraRange connectors infringe the '194 Patent and are within the scope of the General Exclusion Order.

**Answer to Paragraph 41:** On information and belief, CBP has made no determination that either the UltraRange® or the UltraShield™ connectors are within the scope of any exclusion order issued by the ITC.  However, Corning Gilbert is without sufficient information to admit or deny the specific allegations of paragraph 41, and on that basis, denies them.

42.   CBP advised PPC that as of June 22, 2011, CBP Headquarters would direct CBP officials at all Ports of entry in the United States to detain all Corning Gilbert UltraShield and UltraRange connectors at the United States border, before importation into the United States, and refuse entry of any future shipments thereof for the life of the '194 Patent.

**Answer to Paragraph 42:** On information and belief, CBP has made no determination that either the UltraRange® or the UltraShield™ connectors are within the scope of any exclusion order issued by the ITC.  However, Corning Gilbert is without sufficient information to admit or deny the specific allegations of paragraph 42, and on that basis, denies them.

43.    CBP further advised it is in the process of finalizing a written determination that Corning Gilbert's UltraShield and UltraRange connectors infringe the '194 Patent and are within the scope of the General Exclusion Order.

**Answer to Paragraph 43:**        On information and belief, CBP has made no determination that either the UltraRange® or the UltraShield™ connectors are within the scope of any exclusion order issued by the ITC.   However, Corning Gilbert is without sufficient information to admit or deny the specific allegations of paragraph 43, and on that basis, denies them.

44.    CBP's written determination will be issued pursuant to the provisions of 19 C.F.R. Part 177, and the Office of International Trade at Customs Headquarters will make the decision available to CBP personnel, and to the public on the CBP homepage on the World Wide Web at www.CBP.gov.

**Answer to Paragraph 44:**        Corning Gilbert is without sufficient information to admit or deny the allegations of paragraph 44, and on that basis, denies them.

## Count I

### *([Alleged] Infringement of the '194 Patent)*

45.    PPC repeats and reasserts all allegations contained in Paragraphs 1 through 44 above as if they were stated in full herein.

**Answer to Paragraph 45:**        Corning Gilbert repeats and reasserts all responses to PPC's allegations in paragraphs 1 through 44 as if they were stated in full herein.

46.    By virtue of the First Action, Corning Gilbert had actual knowledge of the '194 Patent.

**Answer to Paragraph 46:**        Corning Gilbert admits that it had knowledge of the '194 Patent by virtue of the First Action.

47.    By having made, used, offered for sale, sold, and/or imported in the United States its infringing UltraShield and UltraRange series coaxial cable connectors, Corning Gilbert has engaged in and/or has induced others to engage

in acts of infringement of the '194 Patent, literally or under the doctrine of equivalents.

**Answer to Paragraph 47:**        Corning Gilbert denies that either its UltraRange® or UltraShield™ connectors infringe the '194 Patent and denies all remaining allegations of paragraph 47.

48.    Such unlawful infringing activity by Corning Gilbert is continuing and will continue unless enjoined by this Court.

**Answer to Paragraph 48:**        Corning Gilbert denies the allegations of paragraph 48.

49.    Corning Gilbert's acts of infringement have caused PPC to suffer irreparable harm and damages in an amount to be proven at trial, including lost sales, lost profits, lost sales opportunities, and loss of good will. Unless and until Corning Gilbert is enjoined by this Court from further infringement, PPC will continue to suffer damages and irreparable injury.

**Answer to Paragraph 49:**        Corning Gilbert denies the allegations of paragraph 49.

50.    Upon information and belief, Corning Gilbert has willfully, deliberately, and intentionally infringed the claims of the '194 Patent, which entitles PPC to a recovery of treble damages, attorney fees, and costs.

**Answer to Paragraph 50:**        Corning Gilbert denies the allegations of paragraph 50.

## Count II

### *([Alleged] Infringement of the '940 Patent)*

51.    PPC repeats and reasserts all allegations contained in Paragraphs 1 through 50 above as if they were stated in full herein.

**Answer to Paragraph 51:**        Corning Gilbert repeats and reasserts its responses to all of PPC's allegations contained in paragraphs 1 through 50 as if they were stated in full herein.

52.     By having made, used, offered for sale, sold, and/or imported in the United States its infringing UltraShield and UltraRange series coaxial cable connectors, Corning Gilbert has engaged in and/or has induced others to engage in acts of infringement of the '940 Patent, literally or under the doctrine of equivalents.

**Answer to Paragraph 52:**          Corning Gilbert denies that either its UltraRange® or UltraShield™ connectors infringe the '940 Patent, and denies all remaining allegations of paragraph 52.

53.     Such unlawful infringing activity by Corning Gilbert is continuing and will continue unless enjoined by this Court.

**Answer to Paragraph 53:**          Corning Gilbert denies the allegations of paragraph 53.

54.     Corning Gilbert's acts of infringement have caused PPC to suffer irreparable harm and damages in an amount to be proven at trial, including lost sales, lost profits, lost sales opportunities, and loss of good will. Unless and until Corning Gilbert is enjoined by this Court from further infringement, PPC will continue to suffer damages and irreparable injury.

**Answer to Paragraph 54:**          Corning Gilbert denies the allegations of paragraph 54.

55.     Upon information and belief, Corning Gilbert has willfully, deliberately, and intentionally infringed the claims of the '940 Patent, which entitles PPC to a recovery of treble damages, attorney fees, and costs.

**Answer to Paragraph 55:**          Corning Gilbert denies the allegations of paragraph 55.

## Count III

### *(Preliminary and/or Permanent Injunction)*

56.     PPC repeats and reasserts all allegations contained in Paragraphs 1 through 55 above as if they were stated in full herein.

**Answer to Paragraph 56:**          Corning Gilbert repeats and reasserts its responses to all of PPC's allegations contained in paragraphs 1 through 55 as if they were stated in full herein.

57.    Corning Gilbert has wrongfully made, used, offered for sale, sold, and/or imported, and continue to make, use, offer for sale, sell, and/or import into the United States, products that practice the '194 and '940 Patents.

**Answer to Paragraph 57:**          Corning Gilbert denies that either its UltraRange® or UltraShield™ connectors infringe either the '194 or '940 Patents and denies the allegations of paragraph 57.

58.    Corning Gilbert's wrongful conduct constitutes infringement of the '194 and '940 Patents, which continues and will continue unless enjoined by this Court.

**Answer to Paragraph 58:**          Corning Gilbert denies the allegations of paragraph 58.

59.    Based on the foregoing, PPC is entitled to a preliminary and/or permanent injunction enjoining Corning Gilbert from making, using, offering for sale, selling, and/or importing in the United States products that practice the '194 and '940 Patents, together with an award of damages sustained by PPC, including, but not limited to, reasonable attorney fees and expenses.

**Answer to Paragraph 59:**          Corning Gilbert denies the allegations of paragraph 59 and denies that PPC is entitled to the relief it seeks, or to any relief.

**Except as expressly admitted, Corning Gilbert denies each and every allegation of PPC's complaint.**

## CORNING GILBERT'S DEFENSES

### FIRST DEFENSE
**(Failure to State a Claim)**

60.    PPC fails to state a claim upon which relief may be granted.

## SECOND DEFENSE
### (Non-Infringement)

61.     No product made, used, sold, offered for sale, and/or imported in the United States by Corning Gilbert infringes or has infringed either the '194 or '940 Patents.

## THIRD DEFENSE
### (Invalidity)

62.     The claims of the '194 and '940 are invalid for failure to comply with the requirements of patentability stated in 35 U.S.C. §§ 101, *et seq*.

## FOURTH DEFENSE
### (Laches)

63.     PPC's complaint is barred, in whole or in part, under the doctrine of laches.

## FIFTH DEFENSE
### (Acquiescence and Estoppel)

64.     PPC's complaint is barred, in whole or in part, under the doctrines of acquiescence and estoppel.

## SIXTH DEFENSE
### (Prosecution History Estoppel)

65.     By reason of proceedings in the United States Patent and Trademark Office during the prosecution of the application that ultimately led to the issuance of the '194 and '940 Patents, PPC is estopped from asserting that any claim of the '194 and '940 Patents patent is infringed by Corning Gilbert under the doctrine of equivalents for one or more of PPC's asserted claims.

## SEVENTH DEFENSE
### (Patent Misuse)

66.     PPC's complaint is barred, in whole or in part, by patent misuse.

## EIGHTH DEFENSE
### (Unclean Hands)

67.     PPC's complaint is barred, in whole or in part, by the doctrine of unclean hands.

## NINTH DEFENSE
### (Innocent Intent)

68.     Corning Gilbert has engaged in all relevant activities in good faith, thereby precluding PPC, even if it succeeds, from recovering reasonable attorney fees and/or costs under 35 U.S.C. § 285.

## TENTH DEFENSE
### (Failure to Mark)

69.     PPC's claim for damages is limited under 35 U.S.C. § 287 for its or its licensees failure to mark.

## ELEVENTH DEFENSE
### (6-year Limitation on Damages)

70.     PPC's claim for damages is limited under 35 U.S.C. § 286.

## CORNING GILBERT'S COUNTERCLAIMS

Pursuant to Fed. R. Civ. P. 13, Counterclaim-Plaintiff Corning Gilbert Inc. alleges as follows for its Counterclaims against PPC:

### I.   NATURE OF THE ACTION

71.   This is an action to remedy intentional interference with business relations; commercial disparagement; abuse of process; and for a declaratory judgment of non-infringement, invalidity, and/or unenforceability of the '194 and '940 Patents.

72.   Corning Gilbert seeks actual and enhanced damages.

### II.   PARTIES

73.   Counterclaim-Plaintiff Corning Gilbert, Inc. is a corporation organized and existing under the laws of the State of Delaware with a place of business located at 5310 W. Camelback Road; Glendale, Arizona 85301.

74.   Corning Gilbert is a supplier of connectors for cable television, broadband communication systems, telecommunications, defense systems, and test and measurement. Corning Gilbert is committed to providing total quality, technical innovation, and superior customer satisfaction.

75.   Counterclaim-Defendant John Mezzalingua Associates, Inc. d/b/a PPC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 6176 East Molloy Road, East Syracuse, New York.

### III.   JURISDICTION AND VENUE

76.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), and 1338 (patents), 28 U.S.C. §§ 2201 and 2202 (declaratory judgments), and 35

U.S.C. § 1, et seq. (patents).  This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

77.     PPC has submitted to the personal jurisdiction of this Court.

78.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c) because PPC filed its complaint in this district.

## IV.   INTRODUCTION

79.     Corning Gilbert will prove that the allegations of patent infringement in this case are objectively baseless and false.  Corning Gilbert will prove that PPC's efforts to enforce the `194 and '940 patents against Corning Gilbert and its attempts to intimidate Corning Gilbert's customers and interfere with Corning contractual relations are wrongful, unjustified, and tortious.

80.     In substance, the `190 and `940 Patents cover a connector where the connector body is deformed in a particular manner in order to secure the connector to the cable.  PPC knows, and has known for over seven years, that the Corning Gilbert UltraRange® connectors do not have this feature.  The Corning Gilbert UltraShield™ connectors likewise lack this feature.

81.     PPC acknowledged that connectors having the design features of the UltraRange® and UltraShield™ were outside the scope of the `194 patent in the Settlement Agreement.  PPC has acquiesced in Corning Gilbert's sale of the UltraRange® connector for over seven years without ever alleging that it was covered by the PPC Patents in Suit and has taken other acts that demonstrate that it knows that the Corning Gilbert UltraRange® and UltraShield™ connectors are not covered by the Patents in Suit.  PPC's attempt to argue otherwise in this case is objectively baseless and improper, as further explained below.

## V.   FACTUAL ALLEGATIONS

### A.   The Relevant Corning Gilbert Drop Coaxial Cable Connectors

#### 1.   Background

82.     Corning Gilbert designs, develops, and markets, among other products, drop coaxial cable connectors.

83.     Corning Gilbert has sold in the United States different models of drop coaxial cable connectors under the "UltraSeal™", "UltraRange®", and "UltraShield™" brands.

84.     Corning Gilbert began selling the UltraSeal™ model no. GAF-US-11 and GAF-US-7 connectors in the United States in about 2000 and 2002, respectively.

85.     Corning Gilbert began selling the UltraRange® connectors in the United States in 2004.

86.     Corning Gilbert began selling the UltraShield™ connectors in the United States in 2010.

### 2.     Structural Design of the UltraSeal™ GAF-US-7 and GAF-US-11 Connectors

87.     A schematic of the UltraSeal™ GAF-US-7 and the GAF-US-11 connector is shown in the following drawings:



**ULTRASEAL™ GAF-US-7 & GAF-US-11 CONNECTOR**

**Disengaged Connector**



**Engaged Connector**

88.     In the above schematics, the connector body has been colored yellow, the gripping member has been colored red, and the connector shell has been colored green.

89.     When the GAF-US-7 and GAF-US-11 connectors are installed on a coaxial cable, the body of the connector (yellow) does not deform.  Instead, the gripping member (red) moves with the shell and slides beneath the body of the connector and provides the force necessary to secure the connector to the cable.

3.     **Structural Design of the UltraRange® & UltraShield™ Connectors**

90.     The structural design of the UltraRange® and UltraShield™ connector is shown in these colored schematic drawings:





91.     In the above schematics, the connector body has been colored yellow, the gripping member has been colored red, and the connector shell has been colored green.

92.     When the UltraRange® and UltraShield™ connectors are installed on a cable, the body of the connector (yellow) is not deformed.  Instead, the gripping member (red) moves with the shell and slides beneath the body of the connector and provides the force necessary to secure the connector to the cable.

93.     As can be seen by a visual inspection of the UltraRange® and UltraShield™ connectors themselves, they, in this litigation, share the same structure as the UltraSeal™ GAF-US-7 and GAF-US-11 connectors.

**B.**     **The History of PPC's Patent Litigation Demonstrates that this Action is Objectively Baseless**

94.     This action is objectively baseless.  Among other things,  PPC agreed in 2003 that the design features used in Corning Gilbert's UltraRange® and UltraShield™ connectors, do not infringe the `194 Patent.

### 1.     The Wisconsin Litigation

95.     PPC sued Gilbert Inc. in 2003 in the U.S. District Court for the Western District of Wisconsin for infringement of the '194 Patent ("Wisconsin Litigation").

96.     During the Wisconsin Litigation, PPC asserted that "UltraSeal™" drop coaxial cable connectors of infringing the '194 Patent.  The specific model numbers of UltraSeal™ connectors accused by PPC of infringing the '194 Patent included, among others, the GAF-US-7 and GAF-US-11 model connectors shown above.

97.     The UltraRange® and UltraShield™ connectors that are accused of infringement in the present action did not exist at the time and hence, were never accused of infringement in the Wisconsin Litigation.

#### (a)     The '194 Patent

98.     The '194 Patent was the subject of extensive prosecution in the U.S. Patent & Trademark Office, and its claims were allowed only after the applicant amended them to include the requirement that the connector body must be "deformed inwardly."  Accordingly, this element is a necessary and fundamental part of the purported invention claimed in the '194 Patent, and there is no scope of equivalents to which this element would be entitled.  Thus, any device that infringes the '194 Patent must have a connector body that is "deformed inwardly" when installed on a cable.

#### (b)     PPC and Its Expert Conceded that the GAF-US-7 and GAF-US-11 Model Connectors did not Infringe

99.     During the Wisconsin Litigation, Corning Gilbert claimed that the GAF-US-7 and GAF-US-11 model connectors did not infringe the '194 Patent because, at a minimum, such connectors did not meet the "deformed inwardly" limitation.

100.     Initially PPC's expert witness, Dr. Charles A Eldering, claimed that the GAF-US-7 and GAF-US-11 connectors infringed the `194 patent.   However, Corning Gilbert demonstrated, through engineering drawings and other evidence, that the -7 and -11 models did not have a connector body that deformed and hence did not  infringe the `194 patent.

101.     After being confronted with the evidence of non-infringement, PPC's expert witness, Dr. Charles A. Elderling, Ph.D. changed his opinion and conceded that the UltraSeal™ GAF-US-7 and GAF-US-11 connectors did not infringe the '194 Patent: "***it is now my opinion that the GAF-US-7, GAF-US-11 and GAF-US-11Q do not literally infringe the claims of the [] '194 Patent.***"  (emphasis added).

102.     Thereafter, PPC conceded that the design of the UltraSeal™ GAF-US-7 and GAF-US-11 connector did not infringe the '194 Patent.

103.     The parties to the litigation reached a settlement of the Wisconsin Litigation.  In that Settlement Agreement, the parties explicitly agreed that Corning Gilbert could continue to market the UltraSeal™ GAF-US-7 and GAF-US-11 connector products.  PPC also agreed that Corning Gilbert was permitted to tell customers that it could continue selling the GAF-US-7 and GAF-US-11 connectors.  The Settlement Agreement contains a typographical error in that the "A" is missing from the product designation references to the GAF-US-7 and GAF-US-11 connector products that were at issue in the litigation.  The "A" merely refers to the presence of an integral pin inside the connector of these particular models that connects with the cable center conductor.

### 2.    The UltraRange® Connector Has Been Sold Since 2004

104.    In 2004, Corning Gilbert introduced the UltraRange® connector to market.

105.    As can be seen in the figure above (¶20), the UltraRange® connector likewise does not have a connector body that is deformed inwardly to secure the connector to the cable. Indeed, as it relates to the shell portion of the connector, the UltraRange® has materially the same design features as the GAF-US-7 and -11, which PPC specifically acknowledged in 2003 were outside the scope of the `194 Patent.

106.    PPC has known of the UltraRange® connector for over seven years and never accused it of infringing the Patents in Suit.  During this time, Corning Gilbert has expanded its use of this connector, extended its supply capacity, and used materially the same design of the gripping member in other connector designs such as the UltraShield™.

107.    PPC has thus long acquiesced and acknowledged that the UltraRange® and UltraShield™ connectors do not infringe the Patents in Suit.

## VI.    THE ITC LITIGATION

108.    In 2008, PPC asked the ITC to investigate the alleged unfair importation of goods that PPC claimed infringed the '194 Patent, among other patents ("ITC Litigation").

109.    In its complaint to the ITC, PPC named eight respondents.

110.    On information and belief, PPC knew that Corning Gilbert imported UltraRange® connectors.  However, consistent with its longstanding acknowledgement of non-infringement, PPC did not name Corning Gilbert as a respondent, and did not assert that the UltraRange® connector infringed in the ITC Litigation.

111.    The ITC eventually issued a General Exclusion Order directed to the '194 Patent. This GEO was attached to PPC's complaint in this action as Exhibit D.

112.     Despite actual knowledge of the Corning Gilbert connector, PPC never accused the UltraRange® connector of infringement in the ITC and never named Corning Gilbert as a respondent in the 2008 proceeding.  By so doing, PPC further acknowledged and acquiesced in the view that the UltraRange® connectors do not infringe the `194 patent.

### 1.     The Present Litigation

113.     Prior to filing this suit, PPC gave no direct notice to Corning Gilbert of its alleged infringement of either the '194 or '940 Patents.

114.     As described above, any device that infringes the '194 Patent must have a connector body that is "deformed inwardly" when engaged.

115.     The '940 Patent has the same requirement.

116.     Prior to filing this suit, PPC inspected Corning Gilbert UltraShield™ connectors, including by cutting them in half and taking photographs of the cross-sections of an UltraShield™ connector on or before July 6, 2011.

117.     On information and belief, over the seven years that it has been on the market in the U.S., PPC has performed a similar visual inspection of the UltraRange® connectors prior to filing the complaint.

118.     A simple visual inspection of Corning Gilbert's UltraRange® and UltraShield™ connectors demonstrates that these connectors do not meet, at a minimum, the limitation in every claim of the '194 and '940 Patents that the connector body deform inwardly.

119.     Moreover, Corning Gilbert's UltraRange® and UltraShield™ connectors share, in all relevant respects to the '194 and '940 Patents, the design features of the GAF-US-7 and GAF-US-11 connectors that PPC and its expert agreed did not infringe the '194 Patent in the Wisconsin Litigation, and that Corning Gilbert has been selling for over seven years.

120.    Accordingly, PPC's contention that the UltraRange® and UltraShield™ connectors infringe the Patents in Suit is objectively baseless.  No reasonable litigant in PPC's position and knowing what it knows could believe that it had an objectively realistic chance of proving that the UltraRange® and UltraShield™ connectors infringe the `194 and `940 Patents.

**B.      PPC's False and/or Misleading Statements Regarding Corning Gilbert's Products**

**1.      Customs and Border Patrol**

121.    In its complaint, PPC alleges that "CBP advised [it] that [CBP] determined that the UltraShield and UltraRange connectors infringe the '194 Patent and are within the scope of the General Exclusion Order."  Complaint at ¶ 41.  To the extent that PPC induced this alleged statement by claiming to CBP that the UltraRange® and UltraShield™ connectors infringe the `194 Patent, such alleged statements were false, objectively baseless, and improper.  To the extent PPC sought to induce such agency action through objectively baseless allegations, its conduct was a sham and not good faith petitioning activity.  The CBP database does not contain any record of any determination that Corning Gilbert products infringe the '194 patent.

**2.      Corning Gilbert's Customers**

122.    On information and belief, PPC has told Corning Gilbert's customers, that the UltraRange® and UltraShield™ connectors infringe the Patents in Suit.  Those statements were objectively false and made in bad faith and with the intent to interfere with Corning Gilbert's business relationships with such customers and harm Corning Gilbert.

123.    On information and belief, these statements were made to at least Cox Communications, Comcast Cable (part of Comcast Corporation), and Shaw Communications, Inc.

## COUNT I
### (Declaratory Judgment of Non-Infringement, Invalidity, and Unenforceability of the '194 Patent)

124.     Corning Gilbert realleges and incorporates by reference paragraphs 71 through 123 of its counterclaims, inclusive, as if fully set forth herein.

125.     By virtue of the complaint filed by PPC in this action, there is an actual and justiciable controversy between Corning Gilbert and PPC concerning non-infringement, invalidity, and unenforceability with respect to the '194 Patent.  A judicial declaration is needed and is appropriate to resolve this controversy.

126.     Corning Gilbert seeks a declaration that the products made, used, imported, sold and/or offered for sale by Corning Gilbert have not and do not infringe, directly or indirectly, any valid and enforceable claim of the '194 Patent and/or that the '194 Patent is invalid or otherwise unenforceable for one of more of the grounds set forth under 35 U.S.C. § 1, et seq.

127.     This case qualifies as an exceptional case under 35 U.S.C. § 285.

## COUNT II
### (Declaratory Judgment of Non-Infringement, Invalidity, and Unenforceability of the '940 Patent)

128.     Corning Gilbert realleges and incorporates by reference paragraphs 71 through 123 of its counterclaims, inclusive, as if fully set forth herein.

129.     By virtue of the complaint filed by PPC in this action, there is an actual and justiciable controversy between Corning Gilbert and PPC concerning non-infringement, invalidity, and unenforceability with respect to the '940 Patent.  A judicial declaration is needed and is appropriate to resolve this controversy.

130.     Corning Gilbert seeks a declaration that the products made, used, imported, sold and/or offered for sale by Corning Gilbert have not and do not infringe, directly or indirectly, any

valid and enforceable claim of the '940 Patent and/or that the '940 Patent is invalid or otherwise unenforceable for one of more of the grounds set forth under 35 U.S.C. § 1, et seq.

131.    This case qualifies as an exceptional case under 35 U.S.C. § 285.

**COUNT III**
**(Intentional Interference with Business Relationships)**

132.    Corning Gilbert realleges and incorporates by reference paragraphs 71 through 123 of its counterclaims, inclusive, as if fully set forth herein.

133.    PPC is aware that Corning Gilbert has an economic interest in selling its UltraRange® and UltraShield™ drop coaxial cable connectors to customers in the market. Further, PPC is aware that Corning Gilbert receives an economic benefit from its ability to offer customers a product that is either protected by Corning Gilbert's own intellectual property rights or, at a minimum, not infringing others' intellectual property rights.  PPC is aware that Corning Gilbert has existing and prospective contractual relationships with third parties, including Cox Communications, based on its ability to manufacture and sell drop coaxial cable connectors without infringing others' intellectual property rights.

134.    PPC intended to harm Corning Gilbert by telling Corning Gilbert's customers that Corning Gilbert's UltraRange® and UltraShield™ drop coaxial cable connectors infringe PPC's patents and that CBP had determined that Corning Gilbert's UltraRange® and UltraShield™ drop coaxial cable connectors were being imported into the U.S. in violation of an in-force General Exclusion Order because of their infringement of the '194 Patent and that CBP would be seizing these connectors at their points of importation thereby interrupting the supply chain.  On information and belief, PPC knew these claims were false and/or misleading.

135.    Accordingly, PPC interfered with Corning Gilbert's existing and prospective contractual relationships with third parties.

136.    PPC has no justification or privilege to interfere with Corning Gilbert's valid business relationships and/or expectancies with third parties.

137.    As a direct and proximate result of PPC's interference with Corning Gilbert's valid business relationships and/or expectancies, Corning Gilbert has been and continues to be damaged in an amount to be determined at trial.

**COUNT IV**
**(Abuse of Process)**

138.    Corning Gilbert realleges and incorporates by reference paragraphs 71 through 123 of its counterclaims, inclusive, as if fully set forth herein.

139.    Through the filing and the maintenance of this objectively baseless lawsuit, PPC has exhibited an intent to harm Corning Gilbert and its relationships with its customers, without justification.

**COUNT V**
**(Commercial Disparagement)**

140.    Corning Gilbert realleges and incorporates by reference paragraphs 71 through 123 of its counterclaims, inclusive, as if fully set forth herein.

141.    PPC's material false and/or misleading statements about Corning Gilbert's products to Corning Gilbert's customers were made with the intent to harm Corning Gilbert and its relationships with its customers, and to take business away from Corning Gilbert in the drop coaxial cable connector market.

142.    PPC made these statements without regard to the consequences that flow from making such material false and/or misleading statements, and a reasonably prudent person would anticipate that economic damage to Corning Gilbert would flow naturally from such statements.

## JURY DEMAND

143.     Corning Gilbert demands a trial by jury on all issues so triable.

## REQUEST FOR RELIEF

**WHEREFORE**, Defendants/Counter-Plaintiff Corning Gilbert prays for the entry of judgment in favor of Corning Gilbert and against PPC as follows:

A.     The Court dismiss with prejudice any and all claims of PPC's complaint and order that PPC take nothing as a result of the complaint and that all of PPC's prayers for relief be denied;

B.     The Court enter judgment that Corning Gilbert has not infringed, contributed to the infringement of, or induced infringement of the '194 and '940 Patents

C.     The Court enter judgment declaring that the '194 and '940 Patents are invalid and/or unenforceable;

D.     The Court enter judgment that preliminarily and/or permanently enjoins PPC and its representatives, assigns or successors, or any subsidiaries, parents, divisions, agents, servants, employees thereof, and/or those in privity with PPC from intentionally interfering with Corning Gilbert's business relationships;

E.     The Court enter judgment that preliminarily and/or permanently enjoins PPC and its representatives, assigns or successors, or any subsidiaries, parents, divisions, agents, servants, employees thereof, and/or those in privity with PPC from commercially disparaging Corning Gilbert and/or its products;

F.     The Court enter judgment that preliminarily and/or permanently enjoins PPC and its representatives, assigns or successors, or any subsidiaries, parents, divisions, agents, servants, employees thereof, and/or those in privity with PPC from abusing process;

G.     For damages in an amount to be proven at trial;

H.     For pre-judgment interest on all such damages;

I.     For reasonable attorneys' fees and costs of suit incurred herein; and

J.     The Court grant to Corning Gilbert such other and further relief as is just and proper.

September 6, 2011

**Dewey & LeBoeuf LLP**
**Harter Secrest & Emery LLP**

By:   /s Andrew N. Stein
—————————————————————
      Joseph P. Lavelle (*pro hac vice* to be filed)
      Andrew N. Stein (Bar Roll No. 514620)
      **Dewey & LeBoeuf LLP**
      1101 New York Avenue, NW
      Washington, DC  20005-4213
      Telephone: (202) 346-8000
      Facsimile: (202) 346-8102
      E-Mail: joelavelle@dl.com
      E-Mail: astein@dl.com

      Jerauld E. Brydges (Bar Roll No. 511646)
      David M. Lascell (Bar Roll No. 301665)
      **Harter Secrest & Emery LLP**
      1600 Bausch & Lomb Place
      Rochester, NY  14604-2711
      Telephone: (585) 232-6500
      Facsimile: (585) 232-2152
      E-Mail: jbrydges@hselaw.com
      E-Mail: dlascell@hselaw.com

      *Attorneys for Defendant/Counterclaim-Plaintiff*
      *Corning Gilbert, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 6, 2011, I electronically filed the foregoing

### <small>DEFENDANT CORNING GILBERT INC.'S ANSWER AND COUNTERCLAIMS</small>

with the Clerk of the Court via the CM/ECF system and served on counsel for the parties listed

in the manner indicated:

### <u>Via CM/ECF</u>

**John Mezzalingua Associates, Inc. d/b/a PPC**

Gabriel M. Nugent
Douglas J. Nash
Alpa V. Patel
**HISCOCK & BARCLAY LLP**
One Park Place
300 South State Street
Syracuse, NY  13202
Tel: (315) 425-2836
Facsimile: (315) 703-7361
E-Mail: gnugent@hblaw.com
E-Mail: dnash@hblaw.com
E-Mail: apatel@hblaw.com

/s/ Andrew N. Stein

-35-
DC437755.1