UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

**JOHN MEZZALINGUA ASSOCIATES, INC. d/b/a PPC,**

       *Plaintiff*,

    **-vs-**

**CORNING GILBERT INC.,**

       *Defendant*.

Civil Action No.
11-cv-00761-GLS-DEP

## PPC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR DENIAL OF CORNING GILBERT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56(d)

**HISCOCK & BARCLAY, LLP**
*Attorneys for Plaintiff*
John Mezzalingua Associates, Inc. d/b/a PPC
Office and Post Office Address
One Park Place
300 South State Street
Syracuse, New York 13202
(315) 425-2828

**DOUGLAS J. NASH**
**GABRIEL M. NUGENT**
**JOHN D. COOK**
    *of Counsel*

5669191.2

# TABLE OF CONTENTS

                                                                                                            **Page**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 3

LEGAL STANDARD ............................................................................................................. 4

ARGUMENT .......................................................................................................................... 6

CONCLUSION ....................................................................................................................... 9

5669191.2

The plaintiff, John Mezzalingua Associates, Inc. d/b/a PPC ("PPC"), submits the following memorandum of law in support of its motion, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, for denial of defendant Corning Gilbert Inc.'s ("Corning Gilbert") motion for summary judgment as premature.  In the alternative, PPC seeks an Order (1) requiring defendant Corning Gilbert to produce all documents and things responsive to PPC's Requests 1, 2, 3, 6, 20, 21, 39, 40, 43, 46, and 62; (2) permitting the depositions of Donald Burris and additional Corning Gilbert witnesses, as necessary to explore Corning Gilbert's production and issues identified in this motion; and (3) adjourning the deadline for PPC to file its opposition to Corning Gilbert's motion for summary judgment until at least 21 days following the completion of such discovery.

## INTRODUCTION

Since the commencement of this case, Corning Gilbert has sought to short circuit the proceedings, including the schedule and process set forth in the Uniform Pretrial Scheduling Order.  As it acknowledged in a letter to the Court prior to the Initial Pretrial Conference [Docket No. 49], Corning Gilbert's motive for doing so is to impact on-going proceedings before U.S. Customs and Border Protection ("CBP").

In 2010, the International Trade Commission ("ITC") issued a General Exclusion Order (the "GEO") concerning cable connectors covered by the claims of one of the patents-in-suit (U.S. Patent No. 6,558,194 (the "'194 Patent")).  Such connectors include Corning Gilbert's UltraRange® and UltraShield™ series coaxial cable connectors (the "Infringing Connectors"), which are accused of infringement in this case.  Upon learning that Corning Gilbert was importing and selling products within the scope of that order, PPC took the necessary steps to have CBP enforce the GEO.  The detentions of Corning Gilbert's Infringing Connectors are a direct result of CBP's diligent enforcement of the GEO, which the agency is required by law to enforce.  CBP

makes its decisions independently and follows the orders of the ITC.  PPC has no more influence with CBP and its decision-making process than Corning Gilbert.  The parties are presently awaiting a formal ruling from CBP.

Corning Gilbert's prior request to advance the Initial Pretrial Conference, and its recently filed motion for summary judgment, are part of its strategy to convince CBP to delay its formal ruling in deference to a determination by this Court.  In other words, Corning Gilbert hopes to use the schedule and proceedings in this case to actively interfere with the substantive rights PPC has in the proceedings before CBP, notwithstanding the fact that Corning Gilbert has appeal rights and can otherwise petition the ITC for relief should it be unhappy with the ruling made by CBP.

This Court should not sanction such conduct by permitting briefing and a hearing on Corning Gilbert's motion to move forward prior to allowing PPC to conduct discovery.  Such discovery is essential to its ability to fairly respond to Corning Gilbert's motion and submit all evidence that would create genuine issues of material fact and preclude entry of summary judgment on an issue as important as infringement of the patents-in-suit.  This is especially true in light of the weakness of Corning Gilbert's non-infringement argument.

Although it will be addressed more fully in PPC's substantive opposition to the motion, Corning Gilbert strains to limit the claim term "cylindrical body member" in the '194 Patent and "connector body member" in U.S. Patent No. 6,848,940 (the "'940 Patent") to a one-piece component.  Then, it argues that it does not infringe because the component that it self-servingly calls the "connector body" in the Infringing Connectors and the component that it calls "the gripping ring" in those products are separate.  The problem for Corning Gilbert is that, in making its argument, it must rely upon a number of factual assertions, each of which will need to be

explored through discovery. Under the circumstances, Corning Gilbert's motion should be denied to permit PPC to explore such factual assertions in discovery prior to preparing and submitting its opposition to Corning Gilbert's motion.

## BACKGROUND

PPC is a family-owned business based in Syracuse, New York. In the cable and telecommunications industry, PPC is the leader in the design and manufacture of what are known as coaxial cable connectors and related products. PPC's connectors are used throughout the world to allow for the reliable connection of coaxial and other types of cable to devices such as televisions, cable boxes, and cable modems. As part of its product design efforts, PPC is constantly innovating. It invests hundreds of thousands of dollars in research and development each year, and has several hundred issued patents on its various innovations, as well as numerous other pending patents on its more recent inventions. The patents at issue in this case, the '194 and '940 Patents, are among PPC's many patents.

Corning Gilbert is one of PPC's direct competitors in the coaxial cable connector market. This is not the first time that PPC has sued Corning Gilbert for infringement of the '194 Patent. The first case resulted in a jury verdict that the '194 Patent was valid and infringed by certain of Corning Gilbert's UltraSeal connectors. On December 12, 2003, a judgment was entered in favor of PPC and permanently enjoining Corning Gilbert from making, using, selling, offering to sell or importing its UltraSeal connectors and other connectors of "no more than a colorable difference or variant" in the United States. On February 9, 2004, PPC and Corning Gilbert executed the Settlement Agreement, pursuant to which they agreed to settle the first case.

Despite its obligations under the Settlement Agreement and court-ordered permanent injunction, Corning Gilbert continues to manufacture, use, sell or offer for sale, and/or import

into the United States coaxial cable connector products that infringe the '194 Patent, namely the Infringing Connectors.  Those same products also infringe the '940 Patent.

## LEGAL STANDARD

Rule 56(d) of the Federal Rules of Civil Procedure provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

This rule provides "a narrow exception to the availability of summary judgment in instances where a party simply cannot fairly respond to a summary judgment motion because of the inability, through no fault of the opposing party, to acquire evidence which is available and would preclude the entry of summary judgment." *Steptoe v. City of Syracuse*, Civil Action No. 09-CV-1132, 2010 U.S. Dist. LEXIS 132631, at *10-11 (N.D.N.Y. Oct 5, 2010) (recommending denial of summary judgment motion as premature where made prior to any significant discovery) (adopted by 2010 U.S. Dist. LEXIS 132635 (N.D.N.Y. Dec. 15, 2010)).  To obtain relief under Rule 56(d), a party must submit a declaration showing "(1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant has been unsuccessful in those efforts." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003).

As the Second Circuit has stated:

> "Fed. R. Civ. P. 56([d]) provides, as interpreted by court opinions, that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001). Accordingly, we have held that summary judgment should only be granted if "***after discovery***, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Hellstrom v. United States Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (internal quotation marks omitted) (alterations in original). "***Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.***" *Id.*; *accord Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) ("Under Rule 56([d]), summary judgment may be inappropriate where the party opposing it shows . . . that he cannot at the time present facts essential to justify his opposition. The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment. The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." (internal quotations and citations omitted)).

*Id.* at 303-304 (partial emphasis in original).

Where a motion for summary judgment is made prior to the completion of necessary discovery, it should be denied as premature. *See*, *e.g.*, *Steptoe*, 2010 U.S. Dist. LEXIS 132631, at *12 (recommending denial of summary judgment motion as premature where made prior to any significant discovery); *Kenific v. Oswego County*, Civil Action No. 5:07-CV-0213 (GTS/ATB), 2010 U.S. Dist. LEXIS 74252 (N.D.N.Y July 23, 2010) (denying motion for summary judgment as premature); *Middle East Crisis Response v. City of Kingston*, Civil Action No. 1:08-CV-690 (LEK/RFT), 2008 U.S. Dist. LEXIS 101110, at *5 (N.D.N.Y Dec. 15, 2008)

5669191.2

(denying motion for summary judgment without prejudice to refile upon completion of discovery).

## ARGUMENT

As set forth more fully in the accompanying Declaration of Douglas J. Nash, Corning Gilbert's motion should be denied in order to permit PPC to conduct discovery that is essential to its ability to fairly respond to Corning Gilbert's motion for summary judgment and submit evidence that would create genuine issues of material fact and preclude entry of summary judgment. Indeed, Corning Gilbert's argument that it does not infringe the patents-in-suit is based on a number of factual assertions concerning non-public information solely within its control. This is plainly apparent from a review of its 20 page, 46 paragraph statement of material facts. Yet, despite its length, Corning Gilbert's statement fails to set forth all facts that are material to a determination of its motion, which instead are included in its memorandum of law and accompanying affidavit.

There are a number of issues that PPC should be permitted to explore and develop through discovery prior to submitting its opposition to Corning Gilbert's motion. These include:

1. The design, manufacture, and operation of the Infringing Connectors (Nash Declaration, ¶¶ 12-19);

2. The basis for the design of the Infringing Connectors, including efforts to "design around" the '194 Patent (Nash Declaration, ¶¶ 20-25);

3. The prosecution, nature, and scope of the patent Corning Gilbert claims to cover the Infringing Connectors (*i.e.*, U.S. Patent No. 7,182,639) (Nash Declaration, ¶¶ 26-33);

    4.       The testimony of Donald Burris that Corning Gilbert relies upon to support its motion (Nash Declaration, ¶¶ 34-40); and

    5.       The alleged invalidity and unenforceability of the patents-in-suit (Nash Declaration, ¶¶ 41-51).

PPC attempted to take discovery concerning these issues prior to the filing of Corning Gilbert's motion. Indeed, shortly after the Initial Pretrial Conference, PPC served its First Request for the Production of Documents and Things. (Nash Declaration, Exhibit 5.) These demands concerned a number of issues that are relevant to the claims and defenses asserted in this case, including several that are particularly important to the issues raised by Corning Gilbert's motion, such as:

    1.       Ten samples of each and every version/model of the Infringing Connectors made, sold or offered for sale since 2003.

    2.       All documents concerning the engineering, design and mechanical operation of each and every version/model of the Infringing Connectors made, sold or offered for sale since 2003. This request includes, but is not limited to, all product and/or mechanical drawings, animations, and/or photographs/images of product cross-sections concerning the Infringing Connectors.

    3.       All documents concerning the development of the Infringing Connectors, including without limitation all such documents that concern how the Infringing Connectors attach or are affixed to a cable.

    6.       All documents concerning any and all changes to the way in which the Infringing Connectors attach or are affixed to a cable.

    20.     All documents concerning any effort by you or anyone else to design a connector and/or other product that would avoid infringement of the Patents-in-Suit.

    21.     All documents showing any similarities and/or differences between the Infringing Connectors and the Patents-in-Suit.

39. All documents that refer or relate to any advertising and/or promotional materials distributed to any third parties concerning the Infringing Connectors, including without limitation any samples, videos, demonstrations, and/or presentations.

40. All documents that refer or relate to any instructional and/or demonstration materials distributed to any third parties concerning the Infringing Connectors, including without limitation any samples, videos, demonstrations, and/or presentations.

43. All documents concerning any application, potential or otherwise, for patent protection in any jurisdiction for the Infringing Connectors.

46. All documents concerning the infringement and/or non-infringement of the Patents-in-Suit by the Infringing Connectors.

62. All documents concerning your allegation in Paragraph 81 of the Counterclaims that "PPC acknowledged that connectors having the design features of the UltraRange® and UltraShield™ were outside the scope of the '194 patent in the Settlement Agreement."

Corning Gilbert's response to these demands is due December 2, 2011. However, PPC's opposition to Corning Gilbert's motion for summary judgment is due on November 28, 2011. In the absence of the relief requested by this motion, PPC will not have received the responsive documents and things, and certainly will not have had an opportunity to explore such discovery through depositions of Mr. Burris and perhaps other Corning Gilbert witnesses, until *after* its deadline to oppose Corning Gilbert's motion will have passed. This situation is in no way of PPC's doing. Rather, it is solely the result of the fact that Corning Gilbert has filed a premature motion for summary judgment in an effort to impact the on-going proceedings before CBP. PPC should not be prejudiced by Corning Gilbert's improper maneuvering, the effect of which is that PPC is unable to fairly respond to Corning Gilbert's motion for summary judgment and submit all evidence that would create genuine issues of material fact and preclude entry of summary judgment. Therefore, PPC's motion should be granted.

## CONCLUSION

For these reasons, as well as those set forth in the accompanying declaration of Douglas J. Nash, the Court should grant PPC's motion and deny Corning Gilbert's motion for summary judgment as premature. In the alternative, the Court should issue an Order (1) requiring Corning Gilbert to produce all documents and things responsive to PPC's Requests 1, 2, 3, 6, 20, 21, 39, 40, 43, 46, and 62; (2) permitting the depositions of Donald Burris and additional Corning Gilbert witnesses, as necessary to explore Corning Gilbert's production and issues identified in this motion; and (3) adjourning the deadline for PPC to file its opposition to Corning Gilbert's motion for summary judgment until at least 21 days following the completion of such discovery.

Date: November 10, 2011　　　　　　　　**HISCOCK & BARCLAY, LLP**

By: _____s/ Douglas J. Nash_____
　　　Douglas J. Nash (511889)
　　　Gabriel M. Nugent (513947)
　　　John D. Cook (511491)

Office and Post Office Address
One Park Place
300 S. State Street
Syracuse, New York 13202
Telephone:　(315) 425-2700
Facsimile:　(315) 425-2701
E-Mail:　　dnash@hblaw.com

*Attorneys for Plaintiff John Mezzalingua Associates, Inc., d/b/a PPC*