**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PPC BROADBAND, INC.,**
**d/b/a PPC,**

                        **Plaintiff,**                  **5:11-cv-761**
                                                            **(GLS/DEP)**
                          **v.**

**CORNING GILBERT INC.,**

                        **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Hiscock, Barclay Law Firm | DOUGLAS J. NASH, ESQ. |
| One Park Place | GABRIEL M. NUGENT, ESQ. |
| 300 South State Street | JASON C. HALPIN, ESQ. |
| Syracuse, NY 13202-2078 | JOHN D. COOK, ESQ. |
| | KATHRYN DALEY CORNISH, ESQ. |
| **FOR THE DEFENDANT:** | |
| DLA Piper LLP | KATHRYN R. GRASSO, ESQ. |
| 500 Eighth Avenue NW | JOSEPH P. LAVELLE, ESQ. |
| Washington, DC 22004 | ANDREW N. STEIN, ESQ. |
| | |
| Harter, Secrest Law Firm | DAVID M. LASCELL, ESQ. |
| 1600 Bausch and Lomb Place | ERIKA N.D. STANAT, ESQ. |
| Rochester, NY 14604-2711 | JERAULD E. BRYDGES, ESQ. |

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

On July 5, 2011, plaintiff PPC Broadband, Inc. commenced this patent infringement action against defendant Corning Gilbert Inc. (Compl., Dkt. No. 1.) Pending are, among other things: PPC's motions to exclude certain opinions offered by Gilbert's expert witnesses, Dr. Robert Mroczkowski and Donald Burris, (Dkt. No. 129), and to exclude the trial testimony of Gerald J. Mossinghoff, (Dkt. No. 126); Gilbert's motions to strike and/or preclude certain opinions offered by PPC's expert witness, Dr. Charles A. Eldering, (Dkt. No. 134), and to exclude the trial testimony of Dr. Phillip A. Beutel, (Dkt. No. 133); and the parties' opposing motions on the issue of infringement—PPC's motion for summary judgment on infringement, (Dkt. No. 127), and Gilbert's motion for summary judgment on non-infringement, (Dkt. No. 132).[1] For the reasons that follow, all of the above motions are denied.

## II. Background[2]

---

[1] PPC has also filed a letter motion requesting oral argument on the pending dispositive motions in this case. (Dkt. No. 187.) Because the court finds that oral argument is unnecessary, this motion is denied.

[2] Unless otherwise noted, the facts are not in dispute. Further, for additional background facts, the parties are directed to the court's December 23, 2013 Memorandum-Decision and Order. (Dkt. No. 206.)

Both PPC and Gilbert are engaged in the business of designing and manufacturing coaxial cable connectors. (*See generally* Compl.) On July 21, 2000, PPC filed a patent application for a coaxial cable connector, which was approved and a patent issued to PPC on May 6, 2003 as U.S. Patent No. 6,558,194 ("194 patent"). (*Id.* ¶¶ 1, 23, 24; Dkt. No. 1, Attach. 2.) On January 21, 2003, PPC filed another patent application for a coaxial cable connector, which was approved and a patent issued to PPC on February 1, 2005 as U.S. Patent No. 6,848,940 ("940 patent"). (Compl. ¶¶ 1, 26, 27; Dkt. No. 1, Attach. 3.)

PPC alleges that Gilbert has infringed the 194 and 940 patents by making, using, selling, offering for sale, selling, and/or importing coaxial cable connectors, specifically Gilbert's UltraRange and UltraShield series connectors, that infringe on PPC's patents. (Compl. ¶¶ 45-58.)

The patent claims at issue here consist of claims 1 and 2 of the 194 patent and claims 1-2, 5, 8-9, 11, 16, and 20 of the 940 patent. (Pl.'s Statement of Material Facts (SMF) ¶ 1, Dkt. No. 127, Attach. 13; Def.'s SMF ¶ 19, Dkt. No. 132, Attach. 2; Pl.'s Resp. to Def.'s SMF ¶ 2, Dkt. No. 168, Attach. 1 at 35-46.) Both the 194 patent and the 940 patent are

Familiarity therewith is presumed.

directed to a particular type of coaxial cable connector. (Def.'s SMF ¶ 9.) The patents generally disclose a connector in which a compression ring is slid axially over a cylindrical body member—in the case of the 194 patent—or a connector body—in the case of the 940 patent—deforming part of the cylindrical sleeve of the body member/connector body inwardly against the jacket of the coaxial cable to create a mechanical engagement and form a water tight seal. (Dkt. No. 34, Attach. 1 at ¶ 8; Dkt. No. 59 at 5-6.)

As relevant to these motions, the chief area of dispute between the parties concerns whether or not Gilbert's connectors have a connector body that deforms when the gripper, or fastener member, engages with the connector body to connect to the coaxial cable.[3] Gilbert's connectors consist of two pieces—one piece Gilbert labels the body, and another piece that Gilbert labels the gripper or gripping member. (Pl.'s SMF ¶ 6.) Gilbert asserts that its body is not deformed, but rather its gripper is deformed, which Gilbert contends is not part of the connector body. (Def.'s

---

[3] The parties agree that, for purposes of this lawsuit, there are no material differences between the operation of Gilbert's UltraRange line of connectors and the UltraShield connectors. (Pl.'s SMF ¶ 4; Def.'s SMF ¶ 37.)

SMF ¶ 38.)  PPC asserts that Gilbert's gripper is, in fact, part of the connector body or body member, as covered by the patents' asserted claims, and therefore when the gripper deforms, the connector body deforms, which infringes on the patents in suit.  (*Id.*)

The parties to this action requested claim construction on disputed terms in the two patents in suit, and a claim construction hearing ("*Markman* hearing") was conducted by Magistrate Judge David E. Peebles on April 25, 2012.  (Dkt. No. 45.)  Judge Peebles issued a Report and Recommendation (R&R) on claim construction, (Dkt. No. 59), which this court adopted in its entirety, (Dkt. No. 67).  At the *Markman* hearing, the parties submitted proposed constructions for ten different terms contained within the patents in suit.  (Dkt. Nos. 36, 38, 39, 45.)  The court determined that the terms "cylindrical body member" and "connector body" required "no further construction" as they were terms "of ordinary usage and fully capable of being understood by a person reading the patents at issue, including a jury adjudicating any infringement claims."  (Dkt. No. 59 at 21-22.)  For purposes of this litigation, they are therefore to be given the full scope of their "ordinary and customary meaning . . . as understood by a person of ordinary skill in the art at the time of the invention."  (*Id.* at 22,

5

27-28.) In adopting the R&R, this court held that "there is neither ambiguity in the terms, nor a dispute as to the scope of the claim." (Dkt. No. 67 at 5.)

Each party has submitted expert reports and/or expert witness statements from expert witnesses in this case, which are in turn relied on in each party's various summary judgment motions. As relevant here, PPC has submitted an expert report on infringement from Dr. Eldering. (Dkt. No. 173, Attach. 5.) Gilbert has submitted an expert report from Dr. Mroczkowski, (Dkt. No. 129, Attach. 2), as well as witness statements from Burris, (Dkt. No. 129, Attachs. 4, 5). PPC has also submitted a rebuttal expert report from Dr. Eldering in response to the witness statement of Burris. (Dkt. No. 172, Attach. 2.) In the present motions, both parties seek to strike and/or exclude the opinions of the other's experts, on the theory that they improperly contradict the court's prior ruling on claim construction during the *Markman* phase of this litigation. (Dkt. No. 129, Attach. 7; Dkt. No. 151.) Additionally, Gilbert is seeking to strike and/or preclude certain opinions from the infringement report offered by Dr. Eldering because they fail to meet the conditions of admissibility under Fed. R. Evid. 702. (Dkt. No. 151.)

### III. Standard of Review

## A. Expert Witnesses

Federal Rule of Evidence 702 governs expert testimony at trial. It provides that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Further elucidating the reliability of an expert's opinion is the court's consideration of the case-specific *Daubert* factors:

> "(1) whether a theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community."

*Lynch v. Trek Bicycle Corp.*, 374 F. App'x 204, 206 (2d Cir. 2010) (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002)).

7

## B. Summary Judgment

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. Discussion

## A. Expert Witnesses

Each party has moved to strike portions of the other's expert witnesses, and/or to preclude the experts from testifying before a jury, because of testimony in the experts' reports that purportedly contradicts the court's claim construction. (Dkt. No. 129, Attach. 7 at 9-15; Dkt. No. 151 at 11-14.)

Additionally, Gilbert seeks to preclude Dr. Eldering because, it alleges, his testimony is not reliable in that he did not base his opinions on scientific or specialized knowledge, and he failed to properly account for plausible alternatives. (Dkt. No. 151 at 11-19.) PPC counters that there is no basis under which to exclude Dr. Eldering's opinions, and that Dr.

8

Eldering's opinions are therefore admissible pursuant to Fed. R. Evid. 702. (Dkt. No. 161 at 5-25.)

"[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). Thus, once the court has conducted its claim construction, the parties may not contradict the court's construction to a jury. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009); *Vulcan Eng'g Co. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1373 (Fed. Cir. 2002); *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (explaining that patent litigation involves two stages: first, the court construes the patent claims as a matter of law; second, the finder of fact determines infringement as a question of fact by comparing the construed claims to the allegedly infringing device). Therefore, while experts may apply the court's claim construction and testify to the ultimate issue of infringement, *see* Fed. R. Evid. 704(a), they may not testify regarding claim construction. *See CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172-73 (Fed. Cir. 2005).

The expert testimony at issue here, when read as whole, and in its

9

overall context, does not appear to contradict or reargue the court's claim construction. Notably, both parties point out, in support of the admissibility of their respective experts' testimony, their witnesses' explicit acceptance of, and reliance on, the court's claim construction. (Dkt. No. 129, Attach. 2 ¶¶ 17-18; Dkt. No. 173, Attach. 5 ¶ 50.) More importantly, after review of the expert reports and witness statements, the court is not convinced that the challenged testimony impermissibly attempts to reconstrue terms already construed by the court. To the contrary, the challenged portions of the witnesses' testimony, when considered in their entirety, primarily constitute permissible opinions as to whether one skilled in the art would consider Gilbert's products to be covered by the claims of PPC's patent, as construed by the court. Therefore, both parties' motions on this basis are denied.

Further, after thorough consideration, the court is unpersuaded at this juncture by any of Gilbert's additional arguments regarding Dr. Eldering's reliability. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("The objective of [Daubert 's gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony."). With regard to the substance of and basis for Dr. Eldering's proposed testimony, the court

is presently satisfied that his opinion is based on his direct exposure to the facts and examination of the connectors in question, is the product of reliable principles and methods, and is the result of a reliable application of these principles to the facts. *See* Fed. R. Evid. 702; *see also Nimely v. City of N.Y.*, 414 F.3d 381, 395-96 (2d Cir. 2005). Specifically, Dr. Eldering: examined the patents in suit, Gilbert's product literature, technical drawings and cross-sectional photographs of the products involved, and samples of the allegedly infringing products themselves; reviewed other similar patents in the industry and considered opposing views; and conducted experiments with the products at issue. (Dkt. No. 173, Attach. 5.)

The present motions do not pertain to the experts' qualifications; rather, the bulk of the parties' contentions regarding reliability go to the weight a jury might assign to a particular opinion at trial. As such, the parties' concerns may be raised at trial through cross-examination or appropriate objections, and the present motions are denied. *See, e.g.*, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means

11

of attacking shaky but admissible evidence."); *United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. 09-290, 2012 WL 5451495, *1-3 (W.D. Pa. Nov. 7, 2012); *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, No. 5:03-CV-0530, 2005 WL 6743205, *3 (N.D.N.Y. Jan. 18, 2005).

Insofar as the parties' remaining motions, (Dkt. Nos. 126, 133), seek to preclude other expert witnesses—namely Mossinghoff and Dr. Beutel—from testifying at trial, and those witnesses are not directly relied upon in the parties' pending summary judgment motions, at this juncture those motions are denied with leave to renew at the appropriate time prior to trial.

**B.** **Infringement**

As for the summary judgment motions on infringement, PPC contends that it is entitled to summary judgment because Gilbert's connectors literally infringe the 194 and 940 patents, and the undisputed evidence shows that the accused products satisfy every claim limitation of the asserted patents. (Dkt. No. 127, Attach. 12 at 7-23.) Gilbert counters that the evidence does not demonstrate that every claim limitation is met. (Dkt. No. 166 at 9-24.) Further, Gilbert not only opposes PPC's summary

judgment motion, but also affirmatively asserts that the accused connectors cannot infringe the patents in suit, and therefore summary judgment of non-infringement is warranted. (Dkt. No. 132, Attach. 3 at 15-25.) Because the court holds that neither party's expert opinions are excluded from consideration, and the expert opinions are in direct conflict with one another on the issue of infringement, the court finds that there is a genuine dispute as to a material fact, and therefore summary judgment is not appropriate at this juncture.

Here, PPC's expert, Dr. Eldering, submitted an expert report and witness statement in which he purported to map each element of the asserted claims of the patents in suit against Gilbert's accused connectors to demonstrate infringement of the patents. (Dkt. No. 173, Attach. 5 at 25-73.) Dr. Eldering concluded that the Gilbert connectors do literally infringe the asserted claims of the patents in suit. (*Id.* ¶ 11.) Specifically, Dr. Eldering opined that the gripper portion of Gilbert's connectors satisfied the elements of the deformable body member or connector body as disclosed in PPC's patents, and that one of ordinary skill in the art would recognize it as such. (*See, e.g., id.* ¶¶ 77-87, 96, 98, 101, 104, 112, 119-120, 137) ("I respectfully disagree with [the assertion of Gilbert's witness] that a person

13

of ordinary skill in the art would not consider the gripping ring to be a part of the body member.").) On the other hand, Gilbert's expert witnesses, Dr. Mroczkowski and Burris, each opined that Gilbert's connectors do not infringe the patents in suit. (Dkt. No. 129, Attachs. 2, 4, 5.) Specifically, they conclude, in direct contradiction to Dr. Eldering's opinions, that one skilled in the art would not consider the gripper portion of Gilbert's connectors to be part of a body member or connector body as disclosed in the asserted claims of the patents in suit. (Dkt. No. 129, Attach. 2 ¶¶ 116-124, 132, 146-154; Dkt. No. 129, Attach. 4 ¶¶ 61-67; Dkt. No. 129, Attach. 5 ¶¶ 20, 24, 27-28.)

Ultimately, the determination of infringement in this case will turn on whether one skilled in the art would consider the "connector body" or "body member" as taught by the asserted claims in PPC's patents to encompass the component labeled the "gripper" or "gripping member" in Gilbert's connectors. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (stating that claim terms which are given their ordinary and customary meaning are to be interpreted as they would be by a person of ordinary skill in the art); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 986 (Fed. Cir. 1995) ("the focus is on the objective test of what one of

14

ordinary skill in the art at the time of the invention would have understood the term to mean."), *aff'd* 517 U.S. 370 (1996). "Summary judgment on the issue of infringement [or non-infringement] is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005). That is not the case here. The conflicting evidence submitted by the parties, primarily the expert opinions and reports by each party's expert witnesses, demonstrates a genuine dispute as to this material fact, such that summary judgment would be inappropriate. Whether the body member or connector body components in the patents cover Gilbert's gripper or gripping member is a question of fact about which reasonable jurors could disagree, and therefore the parties' opposing motions for summary judgment on infringement are denied.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that PPC's motion to exclude the opinions of Dr. Mroczkowski and Burris (Dkt. No. 129) is **DENIED**; and it is further

15

**ORDERED** that Gilbert's motion to strike and/or preclude certain opinions of Dr. Eldering (Dkt. No. 134) is **DENIED**; and it is further

**ORDERED** that PPC's motion to exclude the trial testimony of Mossinghoff (Dkt. No. 126) is **DENIED** with leave to renew prior to trial; and it is further

**ORDERED** that Gilbert's motion to exclude the trial testimony of Dr. Beutel (Dkt. No. 133) is **DENIED** with leave to renew prior to trial; and it is further

**ORDERED** that PPC's motion for summary judgment on infringement (Dkt. No. 127) is **DENIED**; and it is further

**ORDERED** that Gilbert's motion for summary judgment on non-infringement (Dkt. No. 132) is **DENIED**; and it is further

**ORDERED** that PPC's motion requesting oral argument on the pending dispositive motions (Dkt. No. 187) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 31, 2014
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court