**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**PPC BROADBAND, INC.,**
**d/b/a PPC,**

                    **Plaintiff,**                    **5:11-cv-761**
                                                      **(GLS/DEP)**

          **v.**

**CORNING GILBERT INC.,**

                    **Defendant.**

_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Hiscock, Barclay Law Firm                 DOUGLAS J. NASH, ESQ.
One Park Place                            GABRIEL M. NUGENT, ESQ.
300 South State Street                    JASON C. HALPIN, ESQ.
Syracuse, NY 13202-2078                   JOHN D. COOK, ESQ.
                                          KATHRYN DALEY CORNISH,
                                          ESQ.


**FOR THE DEFENDANT:**
DLA Piper LLP                             KATHRYN R. GRASSO, ESQ.
500 Eighth Avenue NW                      JOSEPH P. LAVELLE, ESQ.
Washington, DC 22004                      ANDREW N. STEIN, ESQ.

Harter, Secrest Law Firm                  DAVID M. LASCELL, ESQ.
1600 Bausch and Lomb Place                ERIKA N.D. STANAT, ESQ.
Rochester, NY 14604-2711                  JERAULD E. BRYDGES, ESQ.


**Gary L. Sharpe**
**Chief Judge**


**<u>MEMORANDUM-DECISION AND ORDER</u>**

# I. **Introduction**

On July 5, 2011, plaintiff PPC Broadband, Inc. commenced this patent infringement action against defendant Corning Gilbert Inc. (Compl., Dkt. No. 1.) Pending are, among other things, Gilbert's motions for summary judgment on the defenses of laches and equitable estoppel, (Dkt. No. 136), and for summary judgment on the issue of willfulness, (Dkt. No. 131), and PPC's cross motion for summary judgment on laches and equitable estoppel, (Dkt. No. 169), as well as PPC's motion to strike portions of Gilbert's combined reply to its motion and opposition to PPC's cross motion, (Dkt. No. 198). For the reasons that follow, all four motions are denied.

# II. **Background**[1]

Both PPC and Gilbert are engaged in the business of designing and manufacturing coaxial cable connectors. (*See generally* Compl.) On July 21, 2000, PPC filed a patent application for a coaxial cable connector, which was approved and a patent issued to PPC on May 6, 2003 as U.S.

---

[1] Unless otherwise noted, the facts are not in dispute. Further, for additional background facts, the parties are directed to the court's December 23, 2013 Memorandum-Decision and Order. (Dkt. No. 206.) Familiarity therewith is presumed.

Patent No. 6,558,194 ("194 patent"). (*Id.* ¶¶ 1, 23, 24; Dkt. No. 1, Attach. 2.) On January 21, 2003, PPC filed another patent application for a coaxial cable connector, which was approved and a patent issued to PPC on February 1, 2005 as U.S. Patent No. 6,848,940 ("940 patent"). (Compl. ¶¶ 1, 26, 27; Dkt. No. 1, Attach. 3.)

PPC alleges that Gilbert has infringed the 194 and 940 patents by making, using, selling, offering for sale, selling, and/or importing coaxial cable connectors, specifically Gilbert's UltraRange and UltraShield series connectors, that infringe on PPC's patents. (Compl. ¶¶ 45-58.) More specifically, PPC alleges that Gilbert's infringement has been "willful[], deliberate[], and intentional[]," entitling PPC to enhanced damages and attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285. (*Id.* ¶¶ 50, 55.)

In 2003, in a prior action between these two parties in the United States District Court for the Western District of Wisconsin, PPC alleged that certain cable connectors manufactured by Gilbert under the trade name UltraSeal infringed the 194 patent. (Def.'s Statement of Material Facts (SMF) ¶ 7, Dkt. No. 144, Attach. 1; Pl.'s SMF ¶ 1, Dkt. No. 170, Attach. 1 at 20-29.) After trial, a jury returned a verdict that the UltraSeal connectors infringed the asserted claims of the 194 patent, and a

permanent injunction was entered preventing Gilbert from further infringement of the 194 patent.  (Def.'s SMF ¶ 8; Pl.'s SMF ¶¶ 2-3.)

Following this litigation, Gilbert began production of a new connector under the name UltraRange, which PPC subsequently examined and determined did not infringe the 194 patent.  (Def.'s SMF ¶ 15; Pl.'s SMF ¶¶ 7-9.)  At some point in early 2005, Gilbert modified the design of its UltraRange connector, making changes to the gripper and a taper on the connector shell.  (Def.'s SMF ¶ 32; Pl.'s SMF ¶¶ 11-12.)  On March 24, 2005, Gilbert began distributing this new version of the UltraRange to its customers under the same trade name; PPC was not notified directly of this change to the UltraRange.  (Pl.'s SMF ¶¶ 13, 15.)  Gilbert's marketing materials continued to depict the original design of the UltraRange connector.  (*Id.* ¶ 32.)  At one point after the changes were made to the 2004 version of the UltraRange, PPC did perform testing on the connector, although that testing consisted only of a performance evaluation conducted by a PPC employee with no involvement in infringement analysis.  (*Id.* ¶¶ 17-19.)  Additionally, in October 2005, another PPC sales and marketing employee requested a cross-sectioned cutaway of an UltraRange connector, although it does not appear as though a cross-sectioned

connector was actually obtained by PPC in connection with that request. (*Id.* ¶¶ 21-22.)

In late 2010, PPC became aware that Gilbert was marketing a new line of connectors, under the trade name UltraShield, which was being advertised as having the same design as the UltraRange connectors. (*Id.* ¶ 23.) Upon examining the UltraShield in April 2011, PPC discovered that the design and operation of that connector differed from what it had understood of the UltraRange line of connectors. (*Id.* ¶¶ 24-26.) PPC then re-examined the UltraRange connectors and discovered that changes had been made since the time PPC had first examined the UltraRange. (*Id.* ¶¶ 27-28.) PPC subsequently commenced this action on July 5, 2011, alleging that the UltraShield and the current version of the UltraRange connectors infringe the 194 and 940 patents. (Compl.) Gilbert continues to sell its UltraRange and UltraShield connectors to the present day. (Pl.'s SMF ¶ 44.)

### III. **Standard of Review**

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*,

827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. Discussion

### A. Motion to Strike

PPC has moved to strike portions of two submissions filed by Gilbert: (1) Gilbert's combined reply—in further support of its own motion for summary judgment—and response—to PPC's cross motion for summary judgment—on the defenses of laches and equitable estoppel, (Dkt. No. 188); and (2) the accompanying declaration of Donald Burris, (Dkt. No. 191, Attach. 8). (Dkt. No. 198.) PPC primarily argues that these submissions, or portions thereof, should be stricken from the record because they rely on facts and legal theories that were allegedly not disclosed by Gilbert during discovery, and are now being raised for the first time in Gilbert's responses to summary judgment. (*Id.*, Attach. 1 at 4-18.) Gilbert counters that these arguments and submissions are proper and have been appropriately submitted for consideration by the court. (Dkt. No. 202 at 4-20.) Specifically, Gilbert argues that the facts and legal arguments it makes in its motion papers were adequately disclosed and made available to PPC throughout discovery, and that PPC has not

demonstrated prejudice. (*Id.*) For the reasons that follow, the court agrees with Gilbert.

Generally, otherwise reliable and relevant testimony or evidence may still be inadmissible if it was not properly and timely disclosed pursuant to Federal Rule of Civil Procedure 26. *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373-74 (Fed. Cir. 2008); *see also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). An expert's report fails to meet the requirements of Rule 26(a) if it does not disclose the basis and reasoning underlying that opinion. *Innogenetics*, 512 F.3d at 1373-74. Rule 26(e) requires a party to supplement its discovery disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A). The court may also impose alternative sanctions in lieu of precluding information or testimony at trial. *See* Fed. R. Civ. P.

37(c)(1)(C).  In deciding whether and what sanctions are appropriate for noncompliance with Rule 37(c), the court "considers '(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'" *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (quoting *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)).

Here, Gilbert asserts that the defenses and arguments it made in its combined reply in further support of its summary judgment motion and response to PPC's cross motion, (Dkt. No. 188), and the accompanying declaration of Burris, (Dkt. No. 191, Attach. 8), should not be stricken because the facts and arguments contained within have been available or "made known to [PPC] during the discovery process," Fed. R. Civ. P. 26(e). (Dkt. No. 202.)  Thus, Gilbert claims to have complied with the notice requirements of Rules 26(e) and 37(c)(1).  (*Id.* at 4-7, 10-16, 19-20.) Additionally, Gilbert asserts that PPC has suffered no prejudice resulting from its alleged failures.  (*Id.* at 16-20.)

In this case, Gilbert has adequately disclosed its theories as to laches and equitable estoppel, and facts in support thereof, such that they were "made known" to PPC during discovery, in compliance with the Federal Rules. PPC was certainly aware, given the responses to their interrogatories, of Gilbert's intention to pursue the defenses of laches and equitable estoppel.

While PPC seeks to preclude all arguments made by Gilbert that are not explicitly detailed in Gilbert's interrogatory responses, under the circumstances, it is unlikely that PPC could be surprised by Gilbert's use of arguments in its motion that were at least indicated in the interrogatory responses. (Dkt. No. 203, Attach. 3 at 4-10.) Further, with respect to Burris, he was identified and made available during discovery for deposing, (*see, e.g.*, Dkt. No. 203, Attach. 7), and made numerous prior witness statements in this litigation, which do not appear to contradict the declaration he submitted in support of Gilbert's opposition, (Dkt. No. 191, Attach. 8). *See White v. ABCO Eng'g Corp.*, 221 F.3d 293, 304 (2d Cir. 2000) ("Although it is generally accepted that a later affidavit may not supersede a prior deposition, that rule only applies when the deposition and affidavit conflict."); *Smith v. Target Corp.*, No. 1:10-CV-1457, 2012 WL

9

5876599, *5 (N.D.N.Y. Nov. 20, 2012).

Notably, PPC does not appear to dispute the arguments that Gilbert raised in its motion affirmatively seeking summary judgment. (Dkt. No. 198, Attach. 1 at 1, 6-7.) Instead, PPC takes issue only with arguments made by Gilbert in its responsive papers to PPC's motion seeking summary judgment on laches and equitable estoppel. Thus, with respect to the bases on which Gilbert asserts it is affirmatively entitled to the remedy of summary judgment, the relevant information was communicated such that PPC had notice of the legal defenses Gilbert was raising. Striking the disputed portions of Gilbert's memorandum and the accompanying Burris declaration would be an inappropriate sanction.

PPC also argues that precedent establishes that parties are precluded from setting forth undisclosed litigation theories, beyond the scope of interrogatory responses, raised for the first time after the close of discovery. (Dkt. No. 198, Attach. 1 at 11-14.) However, the bulk of the case law cited by PPC as support for this proposition involves instances where a party wholly failed to disclose a defense in response to properly framed interrogatories, or was otherwise contradictory or misleading in its disclosures. (*Id.* at 11-12.) That is not the case here, where Gilbert's

intent to pursue the defenses of laches and equitable estoppel was established beginning with their pleading in Gilbert's answer, (Dkt. No. 6 ¶¶ 63-64), and where Gilbert's arguments in response to PPC's cross motion for summary judgment on laches and equitable estoppel may reasonably be interpreted as responding to arguments set forth by PPC in its cross motion. PPC's motion to strike is therefore denied, and the court will proceed to address the merits of the parties' cross motions on the defenses of laches and equitable estoppel.

**B.** **Laches and Equitable Estoppel**

With respect to the merits of the parties' opposing summary judgment motions on laches and equitable estoppel, Gilbert asserts that PPC had actual knowledge of the UltraRange connectors' infringement in 2004, and/or constructive knowledge in 2005, such that the passage of time between PPC acquiring such knowledge and its filing suit in 2011 constitutes an unreasonable delay, meriting summary judgment on laches. (Dkt. No. 144 at 5-11.) With respect to equitable estoppel, Gilbert also argues that PPC's actions and subsequent silence led Gilbert to believe that the UltraRange connectors were not infringing. (*Id.* at 11-18.) PPC, in its cross motion, counters that it was not aware, and had no reason to

know, of the design changes made to the UltraRange in 2005 which caused the connector to infringe its patents. (Dkt. No. 170 at 5-20.) PPC also argues that Gilbert has failed to establish its defense of equitable estoppel with record evidence of misleading conduct or reliance. (*Id.* at 20-24.)

The equitable defense of laches requires that "first, the patentee's delay in bringing suit must be 'unreasonable and inexcusable,' and second, the alleged infringer must have suffered 'material prejudice attributable to the delay.'" *Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289, 1297 (Fed. Cir. 2004) (quoting *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992)). "The length of time that may be deemed unreasonable has no fixed boundaries, but rather depends on the circumstances of the case." *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371 (Fed. Cir. 2001). However, if the alleged infringer can prove that the delay between when the patent owner knew or should have known of the infringing conduct and when the patent owner filed suit exceeded six years, the elements of laches are presumed and the burden shifts to the patent owner to show that the delay was reasonable or excusable under the circumstances, or that the delay did not prejudice the alleged infringer.

*See Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998); *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1464 (Fed. Cir. 1998).

A patent owner "should have known" of alleged infringement if the alleged infringer has engaged in "pervasive, open, and notorious activities that a reasonable patentee would suspect were infringing." *Wanlass*, 148 F.3d at 1337-40 (internal quotation marks and citation omitted); *see Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1559 (Fed. Cir. 1997). It is not enough that the patent owner knows of the mere existence of the product which they ultimately allege is infringing; laches only applies against a patent owner who is aware of the infringement, or alleged infringement. *See PSN Ill., Inc. v. Ivoclar Vivident, Inc.*, 398 F. Supp. 2d 902, 907 (N.D. Ill. 2005) ("Knowledge of a product . . . does not automatically indicate actual or constructive knowledge of infringement. Courts . . . have repeatedly rejected the use of the laches defenses against patentees who were aware of an infringing product more than six years before filing suit, but were not aware of the infringement."); *see also Rockwell Int'l Corp. v. SDL, Inc.*, 103 F. Supp. 2d 1192, 1197 (N.D. Cal. 2000) (stating that a patent owner "must have had more than a mere suspicion but less than absolute assurance of [the] alleged infringement in

order to activate the laches clock.").  In other words, "[i]mposing a duty upon [a patent owner] to monitor [its] industry by periodically testing all others' products" would amount to "policing the industry" and "would be unreasonable."  *Wanlass*, 145 F.3d at 1465.  Application of the laches defense precludes the patent owner from recovering damages for all infringement by the defendant that occurred before the complaint was filed. *See Odetics Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1272-74 (Fed. Cir. 1999).

Turning to the other issue raised by the parties, equitable estoppel requires three elements: 1) misleading conduct by the patentee which leads the alleged infringer to reasonably infer that the patent owner does not intend to enforce its patent against the alleged infringer; 2) reliance on that conduct by the alleged infringer; and 3) material prejudice of the alleged infringer as a result of that reliance.  *Ecolab,* 264 F.3d at 1371. Application of the equitable estoppel defense precludes the patent owner from any recovery from the alleged infringer, for either pre- or post-filing infringement.  *See Scholle Corp. v. Blackhawk Molding Co. Inc.*, 133 F.3d 1469, 1471 (Fed. Cir. 1998).

Gilbert's laches argument is dependent on PPC having either actual

or constructive knowledge of potential infringement at some point

sufficiently before filing suit such that the time between those two events

constitutes an unreasonable delay.  After reviewing the parties' arguments

and the relevant record evidence, the court is not convinced that Gilbert

has met its burden to show that it is entitled to summary judgment on the

laches defense.  With respect to actual knowledge, Gilbert points out that

PPC was aware of the UltraRange product line in 2004.  (Dkt. No. 144 at 5-

7.)  While this may be true, it ignores the fact that, upon examining the

2004 UltraRange connector, PPC determined that it did *not* infringe the

patents in suit.  (Pl.'s SMF ¶¶ 8-9.)  Therefore, PPC's awareness of the

UltraRange connector line in 2004 would not serve as awareness of

potential infringement for the purposes of a laches analysis.  *See PSN*, 398

F. Supp. 2d at 907.

   With respect to PPC's constructive knowledge of potential

infringement, Gilbert asserts that because its sales activities of the

modified 2005 version of the UltraRange were pervasive, open and

notorious, a reasonable patent owner would have discovered the 2005

UltraRange's potential infringement sooner than PPC ultimately did in late

2010 or early 2011.  (Dkt. No. 144 at 7-10.)  However, the law does not

impose on PPC a continuing duty to examine products manufactured by their competitors when there is no reason to suspect infringement, *see Wanlass*, 145 F.3d at 1465, particularly where, as here, PPC had already examined the UltraRange in 2004 and determined that it did not infringe, (Pl.'s SMF ¶¶ 8-9).  Gilbert purports to establish that PPC should have known of the potential infringement by arguing that the coaxial cable industry generally is a small one in which the participants closely monitor their competitors.  (Dkt. No. 144 at 8.)  Additionally, Gilbert asserts that a "reasonable patentee would have monitored" Gilbert's products to ensure compliance with the injunction issued as part of the Wisconsin action.  (*Id.*) These conclusory assertions, which are unsupported by citations to legal authority, are simply insufficient to satisfy Gilbert's burden and establish its entitlement to summary judgment.  Even though, as Gilbert argues, PPC was potentially able to discover newly introduced connectors, Gilbert has not established that PPC knew or should have known of the 2005 changes to the UltraRange which PPC argues caused it to infringe.  (*Id.* at 8 ("the evidence shows that PPC can discover a new Corning Gilbert connector less than a month after it went on sale.").)  Therefore, Gilbert's summary judgment motion is denied.

With respect to PPC's cross motion for summary judgment on laches and equitable estoppel, PPC argues that no rational factfinder could conclude that PPC knew or should have known of the potentially infringing conduct more than six years before it commenced this action, and that without the presumption of laches, Gilbert should be foreclosed from even attempting to establish the laches defense. (Dkt. No. 170 at 11-18.)

The court recognizes the difficulty, particularly at the summary judgment stage, of proving a negative—namely, that PPC did not have knowledge of the potential infringement by Gilbert prior to commencing suit. In support of its motion, PPC points to testimony from three PPC employees indicating that between 2004 and 2011, PPC was not aware of the potential infringement and had no reason to suspect it. (Pl.'s SMF ¶¶ 16, 31.) Even assuming that this testimony is sufficient to satisfy the movant's burden on summary judgment, Gilbert points to reasons why PPC should have suspected potential infringement. For example, Gilbert notes that the UltraRange was marketed as a "universal" connector and PPC had previously asserted in response to interrogatories that the technology covered by its patents was essential to any universal connector. (Dkt. No. 188 at 13-14.) As further discussed above, there

remains a question of material fact regarding exactly what PPC knew and when it knew it, or should have known it, such that summary judgment would be inappropriate.

For similar reasons, the disputed issues of material fact regarding whether and when PPC was aware of the alleged infringement prevent the entry of summary judgment for either party on the issue of equitable estoppel.

## C.   <u>Willfulness</u>

Again due to the numerous outstanding issues of material fact, Gilbert's motion for summary judgment on the issue of willfulness, (Dkt. No. 131), is denied.  In support of its motion, Gilbert argues that it could not have willfully infringed the patents in suit because it had objectively reasonable defenses, such as non-infringement and invalidity, to any infringement allegations.  (Dkt. No. 149 at 13-18.)  In response, PPC asserts that Gilbert has not established, as a matter of law, that its defenses are or have been objectively reasonable, and further that the disputed material facts prevent the entry of summary judgment on the issue of willfulness.  (Dkt. No. 167 at 4-22.)  For the reasons that follow, the court agrees with PPC, and Gilbert's motion is denied.

"[P]roof of willful infringement . . . requires at least a showing of objective recklessness." *In re Seagate Tech. LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). In order to find objective recklessness, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement [and] that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *Id.* (internal citation omitted); *see i4i LP v. Microsoft Corp.*, 598 F.3d 831, 858 (Fed. Cir. 2010); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1378 (Fed. Cir. 2002). Generally, an accused infringer is not objectively reckless where it "relies on a reasonable defense to a charge of infringement." *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010); *see Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1006 (Fed. Cir. 2012); *Seagate*, 497 F.3d at 1374. The accused infringer's subjective state of mind is not relevant to this threshold objective inquiry. *Seagate*, 497 F.3d at 1371. Thus, while the second prong of the *Seagate* test is typically a question of fact for the jury, the first prong "should always be decided as a matter of law by the judge." *Bard Peripheral*, 682 F.3d at 1008. When the objective prong

turns on fact questions, or on legal questions dependent on the underlying facts, the judge remains the final arbiter of whether the defense was reasonable, even when the underlying fact question is sent to a jury. *Id.* The Federal Circuit has held that a denial of a plaintiff's motion for summary judgment as to an accused's defenses based on a remaining factual dispute does not make those defenses reasonable. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1337 (Fed. Cir. 2009). Specifically, it stated that just because "an issue [i]s submitted to a jury does not automatically immunize an accused infringer from a finding of willful infringement." *Id.*

To the extent PPC can ultimately succeed at trial on the issue of infringement, a reasonable juror could also determine that Gilbert acted despite an "objectively high likelihood" that its actions constituted infringement of a valid patent. Further, it may ultimately be true that one or more of Gilbert's defenses was reasonable, but given the numerous factual disputes between the parties, the court would be better suited deciding that question after hearing all of the evidence elicited at trial on the various defenses set forth by Gilbert. In other words, at this juncture the court cannot determine, as a matter of law, that if there was any infringement, it

20

was not willful.  Gilbert's motion for summary judgment on the issue of willfulness is therefore denied.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that PPC's motion to strike portions of Gilbert's submissions regarding the defenses of laches and equitable estoppel (Dkt. No. 198) is **DENIED**; and it is further

**ORDERED** that Gilbert's motion for summary judgment on laches and equitable estoppel (Dkt. No. 136) is **DENIED**; and it is further

**ORDERED** that PPC's cross motion for summary judgment on laches and equitable estoppel (Dkt. No. 169) is **DENIED**; and it is further

**ORDERED** that Gilbert's motion for summary judgment on the issue of willfulness (Dkt. No. 131) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 31, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court