**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**PPC BROADBAND, INC.,**

                    **Plaintiff,**

       **v.**

**CORNING OPTICAL**
**COMMUNICATIONS RF, LLC,**

               **Defendant.**

**5:11-cv-761**
**(GLS/DEP)**

_____

**APPEARANCES:**              **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Barclay Damon LLP        JOHN T. GUTKOSKI, ESQ.
One International Place
14th Floor
Boston, MA 02110

80 State Street           BELLA S. SATRA, ESQ.
Albany, NY 12207

One Park Place           DOUGLAS J. NASH, ESQ.
300 South State Street     GABRIEL M. NUGENT, ESQ.
Syracuse, NY 13202-2078   JOHN D. COOK, ESQ.
                         KATHRYN DALEY CORNISH,
                         ESQ.
                         MARK E. GALVEZ, ESQ.

**FOR THE DEFENDANT:**
Orrick, Herrington Law Firm  ANDREW D. SILVERMAN, ESQ.
51 West 52nd Street      DANIEL A. RUBENS, ESQ.
New York, NY 10019

1152 15th Street NW      MARK S. DAVIES, ESQ.
Washington, DC 2005-1706

DLA Piper LLP                    KATHRYN R. GRASSO, ESQ.
500 Eighth Street NW             STEPHEN J. GOMBITA, ESQ.
Washington, DC 20004             JOSEPH P. LAVELLE, ESQ.
                                 ANDREW N. STEIN, ESQ.

Harter, Secrest Law Firm         DAVID M. LASCELL, ESQ.
1600 Bausch & Lomb Place         ERIKA N.D. STANAT, ESQ.
Rochester, NY 14604-2711         JERAULD E. BRYDGES, ESQ.

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Following a three-day trial in July 2015, *see* Dkt. Nos. 359-65, a jury found that Corning Optical Communications RF, LLC willfully infringed PPC Broadband, Inc.'s ("PPC") U.S. Patent No. 6,558,194 ("194 Patent") and U.S. Patent No. 6,848,940 ("940 Patent"). (Dkt. No. 358.) Before trial, Corning amended its answer and preserved an inequitable conduct defense for post-trial resolution. (Dkt. No. 228.) Thereafter, the parties engaged in expedited discovery on that defense. (Dkt. No. 373.) Now pending are Corning's motion for judgment as a matter of law, or, in the

alternative, a new trial, (Dkt. No. 406), and PPC's motion for summary judgment on Corning's inequitable conduct defense, (Dkt. No. 407).[1]

## II. Background

The court and parties are fully conversant with the facts, and no further discussion, separate from that included below, is necessary.

In November 2013, Corning sought *ex parte* reexaminations of PPC's 194 and 940 patents before the Patent Trademark Office. (Pl.'s Statement of Material Facts (SMF) ¶¶ 1, 4, Dkt. No. 407, Attach. 13; Def.'s SMF ¶¶ 49-58, Dkt. No. 421, Attach. 2.) In particular, Corning argued that the claims of the 194 and 940 patents were obvious over U.S. Patent No. 4,400,050 issued to Hayward in view of U.S. Patent No. 4,156,554 issued to Saba. (Pl.'s SMF ¶¶ 2, 5; Def.'s SMF ¶¶ 51, 59.) At both reexaminations, Corning presented expert reports and declarations which described how the combination of Hayward and Saba related to the 194 and 940 patents. (Pl.'s SMF ¶¶ 3, 6.)

In May 2014, during the course of the reexaminations, Corning filed a petition for *inter partes* review (IPR) of PPC's U.S. Patent No. 6,676,446

_____

[1] The court is aware that PPC has moved for additional relief. (Dkt. Nos. 409, 412.) However, in light of the forthcoming bench trial on the surviving equitable defenses, the court reserves on those motions.

3

("446 Patent"), a patent which PPC does not allege to be infringed in this case. (Pl.'s SMF ¶ 7; Def.'s SMF ¶ 64.) As before, Corning alleged that the claims of the 446 patent were obvious over the Hayward patent in view of the Saba patent, which would render the 446 patent invalid. (Def.'s SMF ¶ 65.) In light of Corning's petition and supporting documentation, the United States Patent Trial and Appeal Board (PTAB) decided to institute an IPR of PPC's 446 patent. (Pl.'s SMF ¶ 8; Def.'s SMF ¶¶ 66-67.) The PTAB, however, never reached a final decision and, in August 2015, vacated its decision to institute the 446 IPR, citing Corning's failure to name all parties in interest as required by 35 U.S.C. § 312(a)(2). (Pl.'s SMF ¶¶ 10-12.)

PPC did not disclose the PTAB's decision to institute the 446 IPR in writing to the panel of examiners during the 194 or 940 reexaminations. (Def.'s SMF ¶¶ 54, 63, 82.) Denis Sullivan, an experienced patent attorney, was PPC's lead outside counsel in the 194 and 940 reexaminations as well as the 446 IPR proceeding, and he controlled the day-to-day litigation activities and made final filing decisions in those matters. (Pl.'s SMF ¶ 19; Def.'s SMF ¶¶ 73-75.) Sullivan was aware of his duty to disclose material information in the 194 and 940 reexaminations as

4

required by 37 C.F.R. § 1.555(b).  (Def.'s SMF ¶ 76; Pl.'s SMF ¶ 76, Dkt. No. 427, Attach. 1.)  Furthermore, as a participant in the proceedings, Sullivan was keenly aware of the PTAB's decision to institute the 446 IPR proceeding.  (Def.'s SMF ¶¶ 77-78.)  He decided that PPC was not required to formally submit PTAB's decision to institute the 446 IPR proceeding at the reexaminations and notified Douglas Nash, PPC's lead trial counsel, about that decision.  (Pl.'s SMF ¶¶ 29-32; Def.'s SMF ¶¶ 79-82.)  When asked at his deposition whether his decision would be different if the PTAB had issued a final ruling rather than a preliminary decision to institute the IPR, Sullivan confirmed that his decision would remain the same.  (Pl.'s SMF ¶ 29.)  Other members of PPC's team, including Christopher Day, PPC's chief patent counsel, and Charles Eldering, PPC's technical trial expert, did not disclose the 446 IPR decision at the examiner interviews in the 194 and 940 reexaminations.  (Def.'s SMF ¶¶ 91-92.)

In October 2014, panel examiners for the 940 reexamination, headed by supervisor Jennifer McNeil, interviewed representatives from PPC, including Sullivan, Nash, Day, and Dr. Eldering.  (Pl.'s SMF ¶¶ 33-36.)  All of these PPC representatives later testified that McNeil informed everyone at the interview that the panel was aware of the PTAB's decision to

5

institute the 446 IPR.  (*Id.* ¶¶ 37-40.)

## III.  <u>Standard of Review</u>

## A.  <u>Motions Under Rule 50 and 59</u>

Under Rule 50, "[j]udgment as a matter of law is proper when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *United States v. Space Hunters, Inc.*, 429 F.3d 416, 428 (2d Cir. 2005) (quoting Fed. R. Civ. P. 50(a)(1)).  Rule 59(a)(1), however, permits the court to grant a new trial "when, in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice."  *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998) (internal quotation marks and citation omitted).  Rule 50 requires the court to "consider the evidence in the light most favorable to the party against whom the motion was made and . . . give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence."  *Space Hunters,* 429 F.3d at 429 (internal quotation marks and citation omitted); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  "The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its

6

judgment for that of the jury." *Space Hunters, Inc.*, 429 F.3d at 429 (internal quotation marks and citation omitted). Thus, a motion for judgment as a matter of law may be granted only if "the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998). Under Rule 59, the court is free to weigh the evidence and grant a new trial if the jury's verdict is against the weight of that evidence. *See DLC Mgmt. Corp.*, 163 F.3d at 133.

## B.  Motion Under Rule 56

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV.  Discussion

Corning challenges the jury's finding of willful infringement and its royalty award. (Dkt. No. 406, Attach. 1.) As to infringement, Corning contends that the court's doctrine of equivalents and claim construction

instructions were erroneous.  (*Id.* at 1-8.)  Corning also argues that PPC

failed to present evidence sufficient to support the infringement verdict.

(*Id.* at 5-8, 10-12.)  As to willfulness, Corning contends that the objective

prong has not been met in light of the remaining defenses and that no

reasonable jury could have found that Corning infringed in a subjectively

reckless manner.  (*Id.* at 12-15.)  Finally, Corning challenges the royalty

award of $23.85 million and seeks a new trial or, alternatively, a conditional

order of remittitur.  (*Id.* at 15-21.)  The court addresses these issues

*seriatim*.

## A.    <u>Infringement</u>

Corning argues that the court should not have instructed the jury on

the doctrine of equivalents because the doctrine of prosecution history

estoppel precluded any infringement recovery by PPC on the accused

infringing UltraRange and UltraShield coaxial connector cables.  (Dkt.

No. 406, Attach. 1 at 1-5.)  PPC counters that Corning waived any

objection to a general verdict.  (Dkt. No. 417 at 2-4.)  Specifically, PPC

maintains that, despite ample opportunity to do so, Corning did not object

to the court's verdict form before the jury deliberated.  (*Id.* at 3-4.)  PPC

further cites the court's repeated rejection of Corning's argument that

8

prosecution estoppel precludes a jury finding on the doctrine of equivalents. (*Id.* at 4-7 (citing Dkt. No. 207 at 16; Dkt. No. 360 at 2).) Corning denies that it waived its objection because, in addition to other ways, it preserved its argument at the charge conference. (Dkt. No. 432 at 1-2 (citing Dkt. No. 364 at 4).)

Additionally, Corning renews its repetitive challenge to the court's claim construction of the terms "cylindrical body member" and "connector body." (Dkt. No. 406, Attach. 1 at 8-10.) Essentially, Corning resurrects arguments this court resolved in its earlier decision adopting Judge Peebles' Report and Recommendation. (Dkt. No. 67.) Corning argues that the court erred and instead should have adopted the construction used by the United States Court of International Trade (CIT) in 2013 litigation. (*Id.* at 9 (citing *Corning Gilbert, Inc. v. United States*, 896 F. Supp. 2d 1281, 1292 (Ct. Int'l Trade 2013)).)

Corning further argues that PPC failed to offer sufficient evidence to support the jury's verdict. (Dkt. No. 406, Attach. 1 at 5-7.) PPC counters that the evidence was sufficient for a reasonable jury to find infringement even under the doctrine of equivalents. (Dkt. No. 417 at 8-11.)

Finally, Corning seeks a new trial based on allegations of prejudicial conduct by PPC's attorneys and based on several erroneous evidentiary rulings by the court. (Dkt. No. 406, Attach. 1 at 21-24.) PPC counters that there was no prejudicial conduct, and the court's evidentiary rulings were proper. (Dkt. No. 417 at 22-25.)

Regardless of whether Corning waived its objection to the doctrine of equivalents charge, the court nevertheless rejects these arguments for the same reasons that they were previously rejected in Corning's motions in limine and for summary judgment. (Dkt. Nos. 132, Attach. 3 at 24; 207 at 16; 360 at 2.) In its January 31, 2014 Memorandum-Decision and Order, the court denied Corning's motion for summary judgment on non-infringement and necessarily held that the doctrine of prosecution history estoppel does not legally bar the application of the doctrine of equivalents. (Dkt. No. 207 at 16.) Additionally, the court has already resolved the claim construction issue in favor of an ordinary and customary meaning of "cylindrical body member" and "connector body" and finds no reason to disturb that ruling. (Dkt. No. 67 at 8; Dkt. No. 67, Attach. 1 at 25-28.)

Corning's sufficiency argument also lacks merit. To prove infringement, PPC must have convinced the jury by a preponderance of the

evidence that Corning's UltraRange and UltraShield coaxial cable connectors infringe on PPC's 194 and 940 patents.  *See* 35 U.S.C. § 271. The court instructed the jury that it could find that Corning either literally infringed or did so under the doctrine of equivalents.  (Dkt. No. 365 at 162.) Courts will "uphold [a jury] verdict [of infringement] if there was sufficient evidence to support any of the plaintiff's factual theories; [courts] assume the jury considered all the evidence and relied upon a factual theory for which the burden of proof was satisfied."  *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 849 (Fed. Cir. 2010); *see also Northpoint Tech., Ltd. v. MDS Am., Inc.*, 413 F.3d 1301, 1311 (Fed Cir. 2005).  Accordingly, if sufficient evidence supports one factual theory, the court must uphold the general verdict.  *See Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1339 (Fed. Cir. 2011).

The jury's verdict is supported by the record.  Dr. Charles Eldering, PPC's expert witness, testified that all of the elements in PPC's claims were present in Corning's accused products and explained in detail the process of his claim mapping.  (Dkt. No. 361 at 34-79.)  Corning's own expert, Dr. Robert Mroczkowski, conceded that Corning would infringe on both patents if the jury concluded that "what Corning calls the gripper, and

what it calls the body are part of a two-piece body member." (Dkt. No. 362 at 139.) Dr. Mroczkowski also admitted that in Corning's accused products the compression ring slid over the gripper member and connector body just like in PPC's patent claims. (*Id.* at 143.) Accordingly, the record provides sufficient support for the jury's verdict of literal infringement.

Corning objects that its accused connectors do not meet the claim construction established by the court of "cylindrical body member/connector body." (Dkt. No. 406, Attach. 1 at 16.) The court defined this claim as a "structure of the connector that is secured to the post at one end and includes an open end for receiving a portion of the coaxial cable. This structure can be comprised of more than one piece, and is therefore not limited to a single integral or unitary one-piece component." (Court's Ex. 3, "Glossary of Terms"; Dkt. No. 339 at 9.) Corning cites undisputed testimony from Dr. Eldering opining that the gripper on the accused products does not need to be in direct contact with the metallic body and that the gripper is fit into the compression ring and not the connector body. (Dkt. No. 406, Attach. 1 at 10.) Referencing this testimony, Corning avers that there was not sufficient evidence to show that PPC literally infringed because the gripper was not "secured to the

post at one end." (*Id.* at 10-11.) Corning, however, discounts testimony by Dr. Eldering which opined that the UltraRange and UltraShield had two-piece body members that acted like a single body member. (Dkt. No. 361 at 65, 80, 91.) Essentially, Corning asks the court to reweigh conflicting evidence, a function belonging to the jury, not the court on a Rule 50 motion. *See Space Hunters, Inc.*, 429 F.3d at 429.

Next, Corning claims prejudice from PPC's reference in summation to a consultation between its corporate representative, Charles Hartfelder, and in-house and outside counsel. (Dkt. No. 406, Attach. 1 at 22.) Corning argues that the comment urged the jury to draw an inappropriate adverse inference from attorney-client communications, and the court failed to remedy the prejudice through a curative instruction. (*Id.* at 22-23.) Additionally, Corning objects to PPC's comments in summation regarding the court's claim construction rationale. (*Id.* at 23-24.) Finally, Corning maintains that the court erred by sustaining PPC's objections to its use of the term "body" to refer to its metal body and requiring instead that Corning use the term "portion that Corning refers to as the body." (*Id.* at 24-25.)

PPC responds that Corning suffered no unfair prejudice. (Dkt. No. 417 at 22-25.) Specifically, PPC asserts that it never asked the jury to

13

adversely infer anything about Corning's attorney-client communications, and that Corning opened the door to the comments by relying on Hartfelder's testimony concerning his conversations with counsel. (*Id.* at 22-23.) Similarly, PPC argues that its summation observations regarding claim construction "simply and fairly commented on the actual evidence in the record" and "highlighted . . . unchallenged testimony" about Hartfelder's reliance on the CIT's rejected claim construction in this case. (*Id.* at 23.) Finally, PPC contends that the court properly prevented Corning from arguing claim construction to the jury. (*Id.* at 24-25.)

Although "no adverse inference shall arise from invocation of the attorney-client . . . privilege [in patent litigation]," *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) (en banc), a patentee "is entitled to respond that [the accused infringer] is withholding those opinions of counsel" if the accused infringer "chooses to argue that any infringement was not willful because it sought opinions of counsel," *Retractable Techs. Inc. v. Becton, Dickinson & Co.*, No. 2:07-CV-250, 2009 WL 8725107, at *4 n.1 (E.D. Tex. Oct. 8, 2009). Here, Corning raised the issue through Hartfelder's testimony. (Dkt. No. 363 at 98-99.) Accordingly, as the court determined at trial, (Dkt.

No. 365 at 146), PPC was permitted to argue in summation that Corning withheld those legal opinions as circumstantial evidence of willfulness, *see Retractable Techs. Inc.*, 2009 WL 8725107, at *4 (holding patentees may argue that the alleged infringer failed to produce counsel's opinion but "cannot submit that any adverse inference should be drawn as to what the content of an opinion of counsel would have been").

Corning also objects to PPC's reference in summation to Hartfelder's reliance on the claim construction from the 2013 CIT litigation. (Dkt. No. 406, Attach. 1 at 23-24.) However, Corning opened the door to this issue, (Dkt. No. 362 at 32-33), and is not prejudiced by PPC's response, (Dkt. No. 365 at 135-36). Corning also challenges the court's ruling sustaining PPC's objection to Corning's use of the term "body" rather than "the metallic portion that Corning refers to as the body." (Dkt. No. 406, Attach. 1 at 24.) Because Corning attempted to obscure the claim construction previously decided by the court, (Dkt. No. 339 at 9), the court's ruling was proper. *See, e.g.*, *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for the purposes of trial. No party

may contradict the court's construction to a jury."); *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) ("[C]laim construction cannot be argued to the jury.").  Accordingly, Corning suffered no unfair prejudice warranting a new trial.

**B.    Willful Infringement**

After infringement has been found, a patentee may offer proof of willful infringement, and the court is authorized to award up to treble damages if the patentee proves the "requisite recklessness" on the part of the infringer.  *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1005 (Fed Cir. 2012); *see* 35 U.S.C. § 284.  Until the Supreme Court's recent decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.* (Nos. 14-1513, 14-1520, 579 U.S. __, 2016 WL 3221515 (2016)), courts evaluated such recklessness under a two-part test with an objective and a subjective inquiry, both of which had to be proven by clear and convincing evidence.  *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).

To prove objective willfulness a patentee had to demonstrate that "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  *Id.*  The accused infringer's

state of mind was irrelevant to this inquiry.  *See id.*  At the same time, it

was unlikely that the patentee could prevail on the objective prong if the

infringer presented a reasonable defense.  *See Spine Sols., Inc. v.*

*Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed Cir. 2010).

Accordingly, "the question on appeal often posed [wa]s whether a[n

infringer's] defense or noninfringement theory was 'reasonable.'"  *Bard*,

682 F.3d at 1006.  The Federal Circuit determined that the question of

reasonableness "[wa]s best decided by the judge as a question of law

subject to *de novo* review," "even though [it could be] predicated on

underlying mixed questions of law and fact."  *Id.* at 1007-08.

Next, the infringer had to satisfy the subjective prong by clear and

convincing evidence.  *See Seagate*, 497 F.3d at 1371.  To that end, a

patentee had to "demonstrate that this objectively-defined risk (determined

by the record developed in the infringement proceeding) was either known

or so obvious that it should have been known to the accused infringer."  *Id.*

In *Halo Electronics*, the Supreme Court rejected *Seagate*'s "unduly

rigid" test and instead held that "district courts [should] exercise their

discretion" as provided in 35 U.S.C. § 284 to determine whether to award

enhanced damages.  *Halo Elecs.*, 2016 WL 3221515, at *8-9, *11.  Now,

"[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* at *8. Additionally, the court disavowed the burden of proof prescribed by *Seagate* and opted for the lesser preponderance of the evidence standard for a patentee to prove an alleged infringer's recklessness. *Id.* at *9. At the same time, the court instructs district courts, when exercising their discretion, "'to be guided by [the] sound legal principles' developed over nearly two centuries of application and interpretation of the Patent Act." *Id.* at *11 (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). On appeal, circuit courts will review enhanced damages awards for abuse of discretion. *Id.* at *10.

Corning argues that a number of defenses preclude a finding of willful infringement. (Dkt. No. 410.) While such meritorious defenses no longer guarantee an alleged infringer can overcome a willfulness finding, *Halo Elecs.*, 2016 WL 3221515, at *8, they are nevertheless relevant to "the particular circumstances of [a] case in deciding whether to award damages, and in what amount," *id.* at *9. In both its original and amended answer, Corning plead affirmative defenses including invalidity, laches,

acquiescence and estoppel, patent misuse, unclean hands, innocent intent, and failure to mark.  (Dkt. No. 6 ¶¶ 62-64, 66-69; Dkt. No. 229 ¶¶ 62-64, 66-69.)  Before trial, the court granted Corning's motion to amend its answer and add the affirmative defense of inequitable conduct. (Dkt. No. 228.)  After trial, the court authorized expedited discovery on this issue.  (Dkt. No. 373.)

In January 2014, the court granted PPC's motion for summary judgment, concluding that the 194 patent was valid on the grounds of collateral estoppel.  (Dkt. No. 208.)  Subsequently, in Corning's pretrial memorandum, it stated that it no longer intended to challenge the validity of the 940 patent in light of the court's earlier ruling.  (Dkt. No. 304 at 14.) Additionally, before trial, in opposition to PPC's motion in limine, (Dkt. No. 291 at 6 n.2), and at the final pretrial conference, (Dkt. No. 339 at 39, 41), Corning stated that it would not pursue the equitable defense of patent misuse.  Furthermore, at the same final pretrial conference, Corning explained that it would only pursue the defense of unclean hands "in the sense that [it was] relying on other equitable defenses."  (Dkt. No. 339 at 39.)  Later, at the charge conference, Corning agreed with the court's suggestion that it abandon this defense because it overlapped with laches

and equitable estoppel.  (Dkt. No. 364 at 8.)  Corning did not refer to its other plead defenses of acquiescence, innocent intent, and failure to mark in its pretrial memorandum or proposed jury instructions.  (Dkt. Nos. 273; 304.)  Additionally, for the first time, Corning now advances a defense under the *Kessler* doctrine.  (Dkt. No. 410 at 22-24.)

PPC now moves for summary judgment on Corning's new affirmative defense and counterclaim of inequitable conduct.  (Dkt. No. 407.)  PPC also seeks judgment that Corning waived or abandoned its affirmative defenses of invalidity, acquiescence, patent misuse, unclean hands, innocent intent, and failure to mark.  (Dkt. No. 408, Attach. 1 at 3-6.)  Similarly, PPC requests that the court dismiss Corning's defense based on the *Kessler* doctrine.  (Dkt. No. 416 at 24-25.)  PPC, nevertheless, agrees that a trial is necessary on Corning's remaining equitable defenses of equitable estoppel and laches.  (Dkt. No. 364 at 9-13.)  For the reasons that follow, the court grants PPC's motion for summary judgment on Corning's inequitable conduct defense and agrees with PPC that Corning has waived or abandoned its other defenses with the exception of equitable estoppel and laches.

   1.    *Inequitable Conduct*

PPC argues that Corning cannot prove as a matter of law that PPC engaged in inequitable conduct at the reexaminations of the 194 and 940 patents. (Dkt. No. 407, Attach. 12 at 1-16.) Specifically, PPC contends that Corning fails to demonstrate that PPC acted with the requisite specific intent to deceive the PTO by failing to disclose a decision by the PTAB to institute an IPR of the 446 patent. (*Id.* at 7-16.) In particular, PPC maintains that its attorneys, specifically, its lead outside counsel Denis Sullivan, did not find the 446 IPR material to the reexaminations of the 194 and 940 patents. (*Id.* at 7-10.) Furthermore, PPC asserts that Corning cannot establish inequitable conduct through circumstantial evidence. (*Id.* at 10-15.) Rather, PPC stresses such evidence only confirms that it acted in good faith during the reexaminations. (*Id.*)

Corning opposes and contends that a question of fact remains, requiring a trial. (Dkt. No. 421.) Corning maintains that the decision to institute the 446 IPR was sufficiently material to the 194 and 940 reexaminations. (*Id.* at 13.) First, Corning points to the report of its expert Ronald Locati, a mechanical engineer with thirty-five years of experience in the connector field, who opines that disclosure of the 446 IPR was material to the reexaminations. (*Id.* at 14; Dkt. No. 421, Attach. 9 at 3 ¶¶ 13-15.)

Second, Corning cites Sullivan's vast experience in patent litigation and argues that he should have known that the 446 IPR was material to the reexaminations. (Dkt. No. 421 at 10-11.) From this, Corning reasons that the PTAB's decision to institute the 446 IPR was not cumulative, as PPC suggests, but rather material to the reexaminations. (Dkt. No. 421 at 15-17.) Finally, Corning argues the trier of fact could infer that PPC intended to deceive the PTO based on Sullivan's conduct and control over what was introduced by PPC at the 446 IPR and the reexaminations. (*Id.* at 18-20.)

"Inequitable conduct is an equitable defense to patent infringement that, if proven, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). This judicially created doctrine developed from three Supreme Court cases decided in the 1930s and '40s which dismissed patent enforcement suits based on the defense of unclean hands. *See id.* at 1285, 1287 (citing *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944); *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933)). Since the doctrine's creation, and because of the catastrophic impact of its

application,[2] the Federal Circuit noted that "charging inequitable conduct . . . has been overplayed, . . . appears in nearly every patent suit, and . . . clutter[s] up the patent system." *Id.* at 1289 (internal quotation marks and citation omitted).  In 2011, the Federal Circuit sitting en banc narrowed the doctrine's application, citing its "overuse[] to the detriment of the public." *Id.* at 1290.  Consequently, the court, as a general matter, held that "this doctrine should only be applied in instances where the patentee's misconduct resulted in an unfair benefit of receiving an unwarranted claim." *Id.* at 1292 (citations omitted).

To prevail, "the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Id.* at 1290 (citation omitted). For instance, in cases of alleged non-disclosure, "the accused infringer must prove by clear and convincing evidence that the [patent] applicant knew of the [information], knew that it was material, and made a deliberate decision to withhold it." *Id.*  The concepts of intent and materiality are distinct and each must be proven by clear and convincing evidence. *See*

---

[2]  Indeed, the Federal Circuit has referred to the relief in an inequitable conduct case — the unenforceability of the patent — as the "atomic bomb of patent law." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed Cir. 2011) (internal quotation marks and citation omitted).  The court noted that "[u]nlike validity defenses, which are claim specific, inequitable conduct regarding any single claim renders the entire patent unenforceable." *Id.* (citations omitted).

*id.* at 1290-92.  To show materiality, the information must be but-for material to the reexamination.  *See id.* at 1291.  In other words, "[information] is but-for material if the PTO would not have allowed a patentee's claim had it been aware of the undisclosed [information]."  *Id.*

Regarding the intent prong, "[b]ecause direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence."  *Id.* at 1290 (citation omitted).  Still, the alleged infringer must prove specific intent by clear and convincing evidence, meaning that "the specific intent to deceive must be the single most reasonable inference."  *Id.* (internal quotation marks and citation omitted).  Consequently, "when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found."  *Id.* (citation omitted).  Finally, "[b]ecause [the alleged infringer] bears the burden of proof, the patentee need not offer any good faith explanation unless the accused infringer first . . . prove[s] a threshold level of intent to deceive by clear and convincing evidence."  *Id.* (internal quotation marks and citation omitted).

Corning's allegations of PPC's inequitable conduct fall far below the heightened standard articulated in *Therasense.*  First, with regard to PPC's alleged deceptive intent, Corning relies on evidence that Sullivan, PPC's

lead counsel, decided what evidence would be submitted at the reexaminations of the 194 and 940 patents, knew of the 446 IPR decision, and decided not to present it to the PTO. (Dkt. No. 421 at 18.) Corning presses the court to infer from this conduct that PPC acted with a specific intent to deceive the PTO. (*Id.* at 18-20.) However, reasonable inferences other than deception can be drawn from Sullivan's non-disclosure, namely, his opinion that the 446 IPR decision was cumulative of other record evidence in the reexaminations. *See Therasense,* 649 F.3d at 1290. In any event, although PPC did not present written evidence of the decision to institute the 446 IPR to the PTO in the 194 or 940 reexaminations, (Def.'s SMF ¶¶ 54, 63, 82), testimony given and corroborated by all of PPC's representatives indicated that McNeil and the other examiners at the PTO were already aware of this decision at the October 2014 meeting, (Pl.'s SMF ¶¶ 37-40).

Corning remarks that disclosure "would have required little work for PPC" and that "PPC had significant incentive to withhold the '446 IPR [d]ecision from the PTO." (Dkt. No. 421 at 19.) While both of these points may in fact be true, Corning misses the mark. Corning must prove that "the evidence [is] sufficient to *require* a finding of deceitful intent in the light

25

of all of the circumstances," and the court is prohibited from finding PPC deceived the PTO if multiple reasonable inferences may be drawn from its conduct. *Therasense,* 649 F.3d at 1290 (internal quotation marks and citations omitted). Corning also questions Sullivan's judgment by failing to advise the PTO of the 446 IPR decision. (Dkt. No. 421 at 19-20.) PPC, however, need not provide the court with a good faith explanation of its conduct absent a showing by clear and convincing evidence that it intended to deceive the PTO, and Corning has failed to make such a showing. *See Therasense*, 649 F.3d at 1291.

Corning is no more successful on its argument that the decision to institute the 446 IPR was material. Corning contends that PPC should have known that the 446 IPR decision was material, citing Sullivan's experience and its expert's opinion that the decision was but-for material to the 194 and 940 reexaminations. (Dkt. No. 421 at 14; Dkt. No. 421, Attach. 9 at 3 ¶¶ 13-15.) This evidence alone does not demonstrate by a preponderance of the evidence that the PTO would not have allowed PPC's claim had it been aware of the decision to institute the 446 IPR. *See Therasense*, 649 F.3d at 1291; *Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, 768 F.3d 1185, 1189 (Fed. Cir. 2014) ("[T]o assess materiality,

the court must look to the standard used by the PTO to allow claims during examination," which is preponderance of the evidence).  Corning further contends the decision to institute the 446 IPR was material to the 194 reexamination because PPC's arguments in the reexamination were inconsistent with the PTAB's decision to institute the 446 IPR.  (Dkt. No. 421 at 14.)  Additionally, Corning suggests that the examiner in the 940 reexamination would not have dismissed claims regarding the Hayward and Saba patents if it had known about the decision to institute the 446 IPR.  (*Id.*)

The record, however, demonstrates that the material underlying the decision to institute the 446 IPR was, in fact, cumulative.  Sullivan testified at his deposition that such materials were already provided to the PTO including "hundreds of pages of expert declarations, the prior art references, the hundreds of pages of the requests where Corning and its expert had explained how Hayward and Saba met the claim limitations of the '194 patent tailored specifically to the claims of the '194 patent."  (Pl.'s SMF ¶ 29.)  Because the PTO already had the underlying information from the 446 IPR at the reexaminations and still found Corning had no claim, PPC "obtain[ed] no advantage."  *Therasense*, 649 F.3d at 1292.  Moreover,

Sullivan attested that he would have found the 446 IPR to be cumulative even if PTAB issued a final decision rather than a preliminary ruling as in this case.  (Pl.'s SMF ¶ 29.)  Consequently, Corning's contention that the PTO would not have permitted PPC's claim remains speculative and does not come close to the but-for materiality standard.  *Cf. Ohio Willow Wood Co. v. Alps South, LLC*, 813 F.3d 1350, 1357-58 (Fed. Cir. 2016) (holding that letters from a third party competitor about prior art were material to corroborate testimony from a worker of the alleged infringer regarding the date the product of the third party competitor was made).

Ultimately, PPC's non-disclosure of the decision to institute the 446 IPR no where near approaches the misconduct demonstrated in the Supreme Court cases from which the doctrine originates.  *See Precision*, 324 U.S. at 816-20 (perjury and suppression of evidence); *Hazel-Atlas*, 322 U.S. at 240 (manufacture and suppression of evidence); *Keystone*, 290 U.S. at 243 (bribery and suppression of evidence).  Consequently, the court grants summary judgment to PPC and dismisses Corning's inequitable conduct counterclaim.

2.    *Equitable Estoppel & Laches*

Corning advances both equitable estoppel and laches defenses to

willful infringement.  (Dkt. No. 229 ¶¶ 63-64.)  The parties cross moved for summary judgment on these defenses, (Dkt. Nos. 136, 169), and the court denied both motions, (Dkt. No. 209).  At trial, the court ruled that it would not submit those issues to the jury for an advisory opinion.  (Dkt. No. 364 at 10; Dkt. No. 365 at 97.)  Accordingly, the parties will try both equitable estoppel and laches before the court in a bench trial to be scheduled in due course.

### 3. Other Defenses

PPC argues that Corning abandoned or waived other affirmative defenses by renouncing its reliance on them or failing to pursue them through a proposed jury charge, pretrial memorandum, or moving for summary judgment on those grounds.  (Dkt. No. 430 at 3-4.)  Corning maintains that in addition to the defenses of inequitable conduct, equitable estoppel, and laches, the court should decide whether the *Kessler* doctrine is a reasonable defense to its willful infringement of PPC's patents.  (Dkt. No. 410 at 9, 22-24, citing *Kessler v. Eldred*, 206 U.S. 285 (1907).)

PPC specifically contends that Corning has waived or abandoned the following defenses: invalidity, patent misuse, unclean hands, acquiescence, innocent intent, and failure to mark.  (Dkt. No. 408, Attach.

1 at 3-6.)  It appears that Corning does not intend to pursue any of these defenses, (Dkt. Nos. 273; 291 at 6 n.2; 304; 339 at 39, 41; 364 at 8), and, in any event, the court agrees that Corning has abandoned such defenses. *See McCardle v. Haddad*, 131 F.3d 43, 51-52 (2d Cir. 1997) (holding a party waived its defense when it failed to mention the defense in its pretrial memorandum, move for summary judgment on that ground, or offer a proposed jury instruction on that issue); *see also Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 1:12-cv-7908-GHW, 2014 WL 4276481, at *6 (S.D.N.Y. Aug. 29, 2014).

Regarding the *Kessler* doctrine, PPC maintains that this is the first time that Corning raised the defense and, thus, waived it.  (Dkt. No. 416 at 24.)  Corning contends that it timely plead this defense because it generally plead PPC's failure to state a claim and the affirmative defense of estoppel, and Corning claims the *Kessler* defense is a more specific articulation of estoppel.  (Dkt. No. 410 at 23.)  Even if timely plead, the defense fails on the merits.

Under *Kessler*, once the accused infringer proves that the specific device accused of infringing does not infringe, "the specific accused device[] acquires the 'status' of a noninfringing device vis-à-vis the

asserted patent claims." *Brian Life, LLC v. Elekta Inc.*, 746 F.3d 1046, 1057 (Fed Cir. 2014). Consequently, the party with a favorable outcome obtains "the right to have that which it lawfully produces freely bought and sold without restraint or interference." *Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.*, 232 U.S. 413, 420 (1914).

Corning argues *Kessler* applies because the CIT held in the 2013 litigation that Corning's UltraRange and UltraShield coaxial cable connectors did not infringe on PPC's patent. (Dkt. No. 410 at 23 (citing *Corning Gilbert, Inc.*, 896 F. Supp. 2d at 1292).) PPC counters that the *Kessler* doctrine does not apply. Specifically, PPC asserts that the CIT only ruled on the 194 patent and not on the 940 patent. (Dkt. No. 416 at 24.) Further, PPC argues the defense is inapplicable because it was not a party to the CIT action. (*Id.* at 24-25.) Finally, PPC notes that the court already ruled collateral estoppel inapplicable, (Dkt. No. 206), and analogizes the *Kessler* doctrine to that defense urging the court to reach the same result, (Dkt. No. 416 at 25.) The court agrees with PPC that, because it was not named as a party to the first action and the 940 patent was not at issue, the *Kessler* doctrine does not apply.

PPC next argues that Corning was subjectively recklessness when it

infringed on PPC's patents.  The jury entered a verdict finding that "PPC prove[d] by clear and convincing evidence that Corning's infringement of the '194 [and '940] patent[s] was willful."[3]  (Dkt. No. 358 at 2.)  Corning argues that the court should enter judgment as a matter of law because "no reasonable jury could have found that Corning acted in a subjectively reckless manner."  (Dkt. No. 406, Attach. 1 at 12-13.)  PPC counters that the court should deny PPC's motion as Corning offers no legal basis to overturn the jury verdict.  (Dkt. No. 417 at 14-16.)

Here, viewing the evidence in PPC's favor, the court agrees with PPC that the jury verdict should stand.  First, despite a 2003 ruling of infringement, Corning later reused the same features previously found to infringe.  (Dkt. No. 359 at 116-120; Dkt. No. 360 at 17-22, 88-91; Dkt. No. 362 at 7-13, 15-16.)  Second, Corning concealed its infringement over many years.  (Dkt. No. 359 at 116-120; Dkt. No. 360 at 22-23, 53-55, 84-86, 88-90; Dkt. No. 362 at 16-17.)  Finally, Corning failed to stop its infringement after PPC commenced the lawsuit.  (Dkt. No. 362 at 24-25.)

---

[3]  At the time of the jury trial, the *Seagate* test, which required that the patentee prove willful infringement by clear and convincing evidence, was the governing law.  Now, as discussed above, willfulness need only be proven by a preponderance of the evidence.  *See Halo Elecs.*, 2016 WL 3221515, at *9.

Accordingly, sufficient evidence supports the willfulness verdict and Corning's arguments to the contrary ask the court to impermissibly substitute its judgment for that of the jury. *See Space Hunters, Inc.*, 429 F.3d at 429.

## C.   Royalty Award

Corning is no more successful on its claim that it should be awarded a new trial on the jury's royalty award of $23.85 million. (Dkt. No. 406, Attach. 1 at 16-21; Dkt. No. 358 at 3.) Corning challenges several evidentiary rulings, contends that the royalty award was against the weight of the evidence, and argues that the court erred by failing to instruct the jury about Corning's non-infringing alternatives. (Dkt. No. 406, Attach. 1 at 16-20.) Alternatively, Corning seeks remittitur. (*Id.* at 21.) PPC counters that Corning is not entitled to a new trial on damages for any of its purported reasons and, thus, remittitur is likewise unwarranted. (Dkt. No. 417 at 16-22.)

### 1.   *Evidentiary Issues*

Corning raises three evidentiary arguments. (Dkt. No. 406, Attach. 1 at 16, 18-19.) First, Corning contends that the testimony of PPC's damages expert, Dr. Beutel, should have been excluded under *Daubert v.*

*Merrell Dow Pharm., Inc.*, (509 U.S. 579 (1993)), and Rule 702 of the

Federal Rules of Evidence.  (Dkt. Nos. 133; 249; 406, Attach. 1 at 16.)

Second, Corning asserts that the court improperly sustained PPC's

objection to its cross-examination of Dr. Beutel about the stipulated royalty

rate from the Wisconsin litigation.  (Dkt. No. 406, Attach. 1 at 18-19.)

Finally, Corning argues that a new trial on damages is warranted because

PPC violated the stipulation regarding commercially introduced new

connector designs.  (*Id.* at 19-20.)

The court has already considered and rejected the arguments that

Corning advances regarding the admissibility of Dr. Beutel's testimony.

(Dkt. No. 339 at 19-22.)  For the same reasons as previously articulated,

the argument is again rejected.  (*Id.*)  At the pretrial conference, the court

also forewarned the parties about using the stipulated royalty rate from the

Wisconsin litigation for an improper purpose, (Dkt. No. 339 at 68-69),

namely, by suggesting that there should be the same royalty rate in this

litigation.  Because Corning attempted to elicit testimony to this effect, the

court properly sustained PPC's objection.  (Dkt. No. 363 at 55.)  Finally,

PPC did not violate its stipulation with Corning by questioning in summation

why Corning did not redesign its connector.  (Dkt. No. 365 at 143-44.)

Rather, as noted by the court at trial, PPC's summation "was in direct response to factual arguments made by Corning during its case and, therefore, was fair and appropriate." (*Id.* at 148.)

    2.    Royalty Award

Corning asserts that the royalty award is against the weight of the evidence because Dr. Beutel's expert analysis was flawed. (Dkt. No. 406, Attach. 1 at 16-18.) To the contrary, the jury's award is supported by the trial record, and Corning's challenges to Dr. Beutel's testimony are unfounded.

First, despite Corning's claim to the contrary, Dr. Eldering rebutted the testimony of Donald Burris, a product design engineer at Corning, about non-infringing alternatives. Specifically, Dr. Eldering explained that each proposed alternative still infringed and opined that "there were no non-infringing and acceptable alternatives available during the [damages] period." (Dkt. No. 365 at 88-94.)

Second, Corning suggests that the jury determined there were non-infringing alternatives by failing to award lost profits. (Dkt. No. 417 at 18.) However, PPC must prove all four factors, only one of them being the availability of non-infringing alternatives, to establish its entitlement to lost

profits.  (Dkt. No. 365 at 168.)  It does not follow that the jury found Corning had non-infringing alternatives because it did not award lost profits. Rather, the jury only determined that PPC failed to meet all four factors to establish its entitlement to lost profits.

Third, Corning criticizes Dr. Beutel's royalty analysis for considering periods beyond the time of the parties' hypothetical negotiation.  (Dkt. No. 406, Attach. 1 at 17-18.)  Conversely, both the Supreme Court and the Federal Circuit permit a damages calculation to include factual developments after the date of the hypothetical calculation.  *See Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988).

Finally, Corning maintains that Dr. Beutel "failed to measure the market value of PPC's bend-the-body technology, exclusive of other features of the connectors."  (Dkt. No. 406, Attach. 1 at 18.)  Dr. Beutel, however, testified that other components, specifically, the universal compression technology, was in high demand by consumers.  (Dkt. No. 363 at 11, 15-16.)  Additionally, Dr. Beutel as well as witnesses for Corning testified that consumers demanded connectors with PPC's

36

patented technology.  (Dkt. Nos. 360 at 36, 62; 361 at 12-13; 362 at 18.)  It was legally proper for Dr. Beutel to consider "the entire market value of [a] product only where the patented feature creates the basis for customer demand or substantially creates the value of the component parts." *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013); *see Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014).  Therefore, the trial record supports the jury's royalty award as reasonable.

    *3.    Jury Instructions*

Corning argues that the court erred by failing to instruct the jury that damages for infringement "should be limited to the cost of implementing certain [available] non-infringing alternatives," which in this case was, according to Corning, $450,000.  (Dkt. No. 406, Attach. 1 at 19.)  However, as PPC's points out, (Dkt. No. 417 at 17 n.6), the court instructed the jury to consider "[t]he utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results" as one factor in its reasonable royalty award determination, (Dkt. No. 365 at 174).  This instruction was sufficiently similar to the requested instruction, and, therefore, did not unfairly prejudice Corning.  *See*

*Translogic Tech. Inc. v. Hitachi, Ltd.*, No. Civ. 99-407-PA, 2006 WL 897995, at *12-13 (D. Or. Apr. 5, 2006).

  4.  *Remittitur*

  Alternatively, Corning seeks a conditional order of remittitur, permitting PPC to choose between a new trial or a royalty award of $450,000.  (Dkt. No. 406, Attach. 1 at 21.)  Corning maintains that the $23.85 million royalty award is grossly excessive.  (*Id.*, citing *Earl v. Bouchard Transp. Co., Inc.*, 917 F.2d 1320, 1328 (2d Cir. 1990).)  Because the court determined that substantial evidence supports the jury award, remittitur is denied.  *See, e.g.*, *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1386 (Fed. Cir. 2002).

  In light of the foregoing, the Clerk will issue a scheduling order in due course to bring about the final resolution of the outstanding equitable defenses.

## V.  Conclusion

  **WHEREFORE**, for the foregoing reasons, it is hereby

  **ORDERED** that Corning's motion for a judgment as a matter of law or, alternatively, for a new trial (Dkt. No. 406) is **DENIED**; and it is further

  **ORDERED** that PPC's motion for summary judgment (Dkt. No. 407)

is **GRANTED**; and it is further

ORDERED that Corning's inequitable conduct defense and counterclaim (Dkt No. 229 ¶¶ 71, 144-91) is **DISMISSED**; and it is further

ORDERED that the Clerk issue a scheduling order in due course, and it if further

ORDERED that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 16, 2016
Albany, New York

Gary L. Sharpe
U.S. District Judge